Joseph V. KENNEDY, III

v.

Michael Allen MAGINNIS

Civ. A. No. 75-37-T.

United States District Court,
D. Massachusetts.

May 7, 1975.

Swartz & Swartz, Edward M. Swartz, Boston, Mass., James P. McCarthy, Milton, Mass., for Kennedy.

James N. Gabriel, U. S. Atty., William A. Brown, Asst. U. S. Atty., Boston, Mass., for Maginnis.

## OPINION

TAURO, District Judge.

On December 23, 1972, while on liberty from the United States Naval Base at Portsmouth, Virginia, the plaintiff was injured in a Boston automobile accident. He was taken immediately to Hunt Memorial Hospital in Danvers, Massachusetts, where he remained until January 4, 1973. He was then transferred to Chelsea Naval Hospital where he was treated until June 1973. After his discharge from the hospital, the plaintiff was separated from the service.[1]

Following his return to civilian life, the plaintiff instituted this malpractice action against Dr. Michael Allen Maginnis, a Navy physician who treated him while he was a patient at Chelsea. Jurisdiction is based on diversity of citizenship.[2] 28 U.S.C. § 1332.

The defendant now moves to dismiss, or, in the alternative, for summary judgment alleging that he is immune from tort liability under the circumstances presented in this case.

The substantive issues of this law suit are affected in large part by the Federal Tort Claims Act, 28 U.S.C. § 2671, which

---

1. Affidavit of Captain William K. Carr.

2. Plaintiff also brought a suit against a second Navy doctor who treated him at the same time.

Kennedy v. Jan Gerrit de Waal, CA 75-38-C. That suit is now pending.

was passed in 1946, removing the doctrine of sovereign immunity as a bar to many tort claims against the federal government. Its legislative history reflects considerable controversy as to whether and to what extent its provisions should be made available to servicemen. Of the eighteen tort claim bills introduced between 1925 and 1935, sixteen contained provisions denying recovery to members of the armed forces. Brooks v. United States, 337 U.S. 49, 51, 69 S.Ct. 918, 93 L.Ed. 1200 (1948). Yet, in the post-World War II legislation which was finally enacted, no such blanket exclusion appeared; although the statute did bar claims arising on foreign soil, 28 U.S.C. § 2680(k), as well as those stemming from combatant activities during time of war, 28 U.S.C. § 2680(j).

One of the earliest cases to construe the Act was Brooks v. United States, 337 U.S. 49, 51, 69 S.Ct. 918, 93 L.Ed. 1200 (1948). There two off-duty servicemen who were involved in an accident with an army truck were permitted to maintain personal injury and wrongful death actions against the Government. Specifically left open in *Brooks*, however, was the question of whether a serviceman could recover under the Act for service-connected injuries as well.

Two years later, in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L. Ed. 152 (1950), the Court met that very issue. *Feres* involved three actions brought against the Government stemming from injuries to active duty servicemen caused by the negligence of a fellow member of the armed forces.[3] Although none of the actions arose on foreign soil or in the course of combatant activities, the Court held that the Federal Tort Claims Act did not cover *any* injuries to servicemen arising out of service-connected activities.

The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that act as excluding claims of that character. United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954). *Accord,* Hall v. United States, 451 F.2d 353 (1st Cir. 1971).

As plaintiff correctly points out, *Feres* involved actions under the Tort Claims Act by servicemen or their representatives against the Government, not negligence actions against fellow members of the armed forces. Yet, the same policy considerations which caused the Court to reject servicemen's tort claims have also led lower federal courts to reject servicemen's service-connected negligence actions against colleagues in the military. As the Ninth Circuit noted in affirming dismissal of an enlisted man's malpractice suits against two Army surgeons:

> We are satisfied that while the army medical corps performs mostly a function of service, it nevertheless has a command function over all officers and enlisted men who are admitted to its facilities during the period of their admission. The operations were performed by the medical officers in line of duty. It is not yet within the American legal concept that one soldier may sue another for negligent acts performed in the line of duty. The idea is that an undisciplined army is a mob and he who is in it would weaken discipline if he can civilly litigate with others in the army over the performance of another man's army duty.

---

3. The *Jefferson* and *Griggs* cases involved personal injury and wrongful death actions brought for the alleged malpractice of Army doctors. The *Feres* case was a wrongful death action for negligence of army personnel resulting in a fatal fire in an army barracks. Feres v. United States, 340 U.S. at 136–37, 71 S.Ct. 153.

Bailey v. Van Buskirk, 345 F.2d 298 (9th Cir. 1965), cert. denied, 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966). The two other circuits that have faced the question have reached the same result. Rotko v. Abrams, 455 F.2d 992 (2d Cir. 1972), aff'g, 338 F.Supp. 46 (E.D.Conn. 1971); Bailey v. DeQuevedo, 375 F.2d 72 (3rd Cir. 1967). *See also* Tirrill v. McNamara, 451 F.2d 579 (9th Cir. 1971); Mattos v. United States, 412 F.2d 793 (9th Cir. 1969); Roach v. Shields, 371 F.Supp. 1392 (E.D.Pa.1974).[4]

The plaintiff would distinguish *Van Buskirk* because, unlike the plaintiff there, he was no longer a member of the armed forces when his suit was filed. He argues that any potential danger which this type of litigation might have once posed has now passed. Plaintiff's thesis must be rejected.[5]

The basis of *Feres, Van Buskirk* and their progeny was that the danger of potential litigation by servicemen either against the Government or against fellow members of the armed forces would undermine the foundations of military discipline and possibly thwart the orderly functioning of the armed services. That same menace exists regardless of whether a serviceman's suit is brought immediately, or whether its initiation is delayed until the potential plaintiff is discharged. In either event, "the peculiar and special relationship" among soldiers would be clouded and the "extreme results" of such suits on the maintenance of discipline would be present.

Treating defendant's motion as one for summary judgment it is allowed.

So ordered.

4. Dicta in *Feres* also supports the result reached in those cases. 340 U.S. at 141, 71 S.Ct. 153.

5. Plaintiff's reliance upon United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954) is misplaced. In *Brown* the plaintiff was allowed to maintain an action under the Tort Claims Act for an injury suffered, *after* his discharge, in a Veterans Administration Hospital as a result of negligent treat-

ment of a service-connected disability. Perhaps as an outgrowth of *Brown*, the Congress subsequently acceded to the request of the Veterans Administration and made V.A. medical personnel immune from personal liability for malpractice. *See* 38 U.S.C. § 4116(a); 1966 U.S.Code Cong. & Admin. News, 2523. *See also* Wright v. Doe, 347 F.Supp. 833 (M.D.Fla.1972); Smith v. DiCara, 329 F.Supp. 439 (E.D.N.Y.1971).