**Addison Lee BECTON**

v.

**UNITED STATES of America.**

**Civ. A. No. 74–1126–F.**

United States District Court,
D. Massachusetts.

April 29, 1980.

market value, or cost price, either wholesale or retail, whichever is greater."

John E. Pearson, Springfield, Mass., for plaintiff.

Richard D. Glovsky, Asst. U. S. Atty., Boston, Mass., for defendant.

MEMORANDUM AND ORDER

FREEDMAN, District Judge.

This action arises out of the tragic death of plaintiff's intestate while assigned to recruit training at the Naval Training Center, San Diego, California. The decedent ("Becton") was an apparent suicide; his death was the result of a fall from the roof of his barracks. Plaintiff brings the suit under the Federal Tort Claims Act ("F.T.C.A."), 28 U.S.C. § 2671 *et seq.*

The matter presently before the Court is defendant's motion to dismiss, or in the alternative, for summary judgment.[1] After having considered the pleadings, answers to interrogatories, exhibits, affidavits and memoranda submitted by the parties in light of the pertinent authorities, I find that the motion should be granted.

On August 10, 1972 Addison L. Becton, Jr. enlisted in the United States Navy at a Springfield, Massachusetts recruiting station. He volunteered for the Nuclear Field Program and reported to the Naval Training Center in San Diego, California. On August 13, having exhibited suicidal tendencies (he had slashed his arms and climbed to the top of a building), Becton was admitted to the Naval Training Center Dispensary. He was treated for the arm wounds and released early the next day.

Following the discharge from sick bay, Becton was transferred to the Recruit Evaluation Unit where he was interviewed by a Navy psychiatrist. The psychiatrist was able to make a diagnosis of depressive neurosis. Although he exhibited no further suicidal gestures during the examination, Becton was nevertheless deemed unsuited for continued military service. Accordingly, he was immediately assigned to the Medical Survey Unit where he was to remain while awaiting the processing of his medical discharge from the Navy.

On August 15, 1972, while still assigned to the Survey Unit, Becton apparently left

---

1. The Court has previously entertained a motion to dismiss this action. However, because I felt there should be more evidentiary development of the circumstances surrounding Becton's enlistment, I denied the motion. The parties have now supplied the Court with the requisite information.

without authorization and climbed atop the roof of Building 88. He either fell or jumped from the rooftop, struck a third story window frame on the descent and landed on the sidewalk. He was admitted to Balboa Naval Hospital that day suffering from a pulmonary embolism, cerebral contusion and a brain stem contusion. Becton remained hospitalized until his death on September 26, 1972. He never regained consciousness.

Plaintiff's complaint sounds in negligence. He alleges that defendant's agents, the medical personnel at the naval base, failed to provide his son with reasonable, adequate and necessary medical care and attention. Plaintiff alleges further that this failure on the part of defendant's agents was the proximate cause of the fatal injuries his son sustained. Specifically, plaintiff contends that defendant's agents knew or should have known that Becton posed a real danger to himself and should have assigned him "chasers" [2] to ensure his safety until the discharge procedure was completed.

Defendant's motion to dismiss, or for summary judgment, is based on the rule of law enunciated in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). *Feres* stands for the proposition that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to the service." At p. 146, 71 S.Ct. at p. 159. Plaintiff contends, however, that the "*Feres* doctrine" does not operate as a bar to this action because Becton was not a member of the armed services at the time of defendant's negligence which caused his death. He argues that Becton was insane at the time he purportedly enlisted in the Navy; that no one who is insane has the mental capacity to enter into an enlistment contract; and that, therefore, Becton's enlistment was rendered null and void.

In *Hahn v. Sargeant*, 523 F.2d 461 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976), the First Circuit instructed:

> [i]n determining whether summary judgment is appropriate the Court must "look at the record . . . in the light most favorable to . . . the party opposing the motion . . . ." *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Similarly, the Court must indulge all inferences favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 933, 8 L.Ed.2d [176 (1962); *Rogen v. Ilikon*, 361 F.2d] 260, 266 (1st Cir. 1966). These rules must be applied with recognition of the fact that it is the function of summary judgment, in the time hallowed phrase, "to pierce formal allegations of fact in the pleadings . . .," *Schreffler v. Bowles*, 153 F.2d 1, 3 (10th Cir. 1946), and to determine whether further exploration of the facts is necessary. *Briggs v. Kerrigan*, 431 F.2d 967, 968 (1st Cir. 1970).

at 464; *accord, Maiorana v. MacDonald*, 596 F.2d 1072, 1076-7 (1st Cir. 1979); *Thyssen Plastik Anger KG v. Induplas, Inc.*, 576 F.2d 400, 401 (1st Cir. 1978). Similarly, Rule 56(c), F.R.Civ.P., provides, in pertinent part, that summary judgment should not be entered unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The determination of whether or not there exists a genuine issue as to any material fact necessarily involves a twofold inquiry. The Court must consider the "genuineness" as well as the "materiality" of any issue of fact proffered by the party opposing the motion. In *Hahn v. Sargeant, supra*, the First Circuit addressed the dual

2. "Chasers" are escorts and are assigned to Navy personnel when it is considered necessary to ensure one's presence at a particular place at a given time. There were no chasers assigned to Becton after his release from the Dispensary or after his psychiatric examination.

nature of the standard set forth in Rule 56(c).

The language of Rule 56(c) sets forth a bifurcated standard which the party opposing summary judgment must meet to defeat the motion. He must establish the existence of an issue of fact which is both "genuine" and "material." A material issue is one which affects the outcome of the litigation. To be considered "genuine" for Rule 56 purposes a material issue must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co., Inc.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The evidence manifesting the dispute must be "substantial," *Fireman's Mut. Ins. Co. v. Aponaug Mfg. Co., Inc.*, 149 F.2d 359, 362 (5th Cir. 1945), going beyond the allegations of the complaint. *Beal v. Lindsay*, 468 F.2d 287, 291 (2nd Cir. 1972).

523 F.2d at 464.

Becton's mental competency, or lack thereof, at the time of his enlistment in the Navy is the only issue of fact in dispute here. I fail to find, however, any evidence to support plaintiff's contention that Becton was insane.[3] He was examined by a physician the day he enlisted. While the examining doctor was not a psychiatrist, he was able to conclude, based on Becton's medical history and a personal interview, that Becton was mentally suitable for enlistment in the service. Furthermore, although plaintiff alleges his son's incompetence, he has testified, through answers to interrogatories propounded by defendant, that he is unaware of the existence of any documents or witnesses that would verify the allegations. Plaintiff has also admitted that prior to August 10, 1972 his son had not consulted with, been under the care of, or been examined by any doctor, psychiatrist or psychologist with respect to any mental, nervous, emotional, psychological or personality disorder; that prior to August 10, 1972 his son had never been a patient at nor had he received any treatment in any institution primarily devoted to treatment of mental disorders; and finally, that prior to August 10, 1972 his son had never attempted suicide nor had he ever exhibited any suicidal gestures.

In short then, plaintiff reasons that because his son committed suicide he must necessarily have been insane and incapable of entering into the service enlistment contract. Plaintiff's rationale is not persuasive. This Court is not as quick to infer Becton's insanity at the time of enlistment from the subsequent suicidal gestures. I do not agree that Becton's sanity on August 10, 1972 and the alleged suicide[4] five days later are mutually exclusive. Since I find no evidence to support the allegations of insanity then, the *Feres* doctrine would act as a bar to this action.

Moreover, even if there were sufficient evidence to establish Becton's insanity, *Feres* would still apply. Assuming this Court were to find that Becton was insane at the time he enlisted in the Navy, his incompetence would merely render the contract voidable under general contract law. *See Williston on Contracts*, section 251, at 81–2, *quoting Rubenstein v. Dr. Pepper Co.*, 228 F.2d 528, 536 (8th Cir. 1955).[5] Since

---

3. Plaintiff has proffered the affidavit of Joseph E. Hasazi, a licensed psychologist, as evidence of his son's mental instability. However, because the affidavit does not meet the strictures of Rule 56(e), F.R.Civ.P. in that it is not made on personal knowledge and does not set out facts which would be admissible in evidence, I have declined to accept it.

4. The Court notes that it is not clear from the record whether Becton fell or jumped from the roof of Building 88.

5. Massachusetts is in the minority of jurisdictions with respect to contracts entered into by incompetents. Therefore, under Massachusetts law this contract would indeed be void, not voidable. However, as the Court stated in *Feres*, "[t]he relationship between the Government and members of its armed forces is 'distinctively federal in character' . . . ." 340 U.S. at 143, 71 S.Ct. at 158. Because Congress has enunciated no separate standard to apply in enlistment contract cases, adherence to the general rule is appropriate. *See Priebe & Sons v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32 (1947).

there is not one scintilla of evidence in the record that Becton ever elected to void the enlistment contract, it would have remained in effect at all relevant times and *Feres* would control.

■ Finally, assuming that Becton was insane at the time of his enlistment and assuming that the incompetence rendered the enlistment void, this Court would, nevertheless, still be constrained to hold that *Feres* is applicable. Relevant case law instructs that because Becton's activities, at the time of defendant's alleged negligence, were so enmeshed with the armed services, he should be treated as if he were a member thereof at all times material. *See Shults v. United States*, 421 F.2d 170, 171–2 (5th Cir. 1969); *see also Woodside v. United States*, 606 F.2d 134, 142 (6th Cir. 1979).

It is clear then, that a determination of the issue as to Becton's sanity on August 10, 1972 is not material in that it does not affect the outcome of this litigation. The *Feres* doctrine applies whether or not Becton is found to have been incompetent. Because *Feres* controls, defendant is entitled to judgment as a matter of law; federal law does not recognize a recovery such as plaintiff seeks. 340 U.S. at 144, 71 S.Ct. at 158. Therefore, this negligence action, brought under the F.T.C.A. on behalf of a "serviceman" whose injuries arose out of, or in the course of, activity incident to the service, is barred.

### Conclusion

Accordingly, for all the above-stated reasons, I find that there exists no genuine issue as to any material fact in this action and that defendant is entitled to judgment as a matter of law. I further find that the doctrine enunciated in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), operates as a bar to this civil action.

Summary judgment shall enter for defendant.