**Howard E. HINKIE, Sr., et al.**

v.

**UNITED STATES of America, et al.**

**Civ. A. No. 79–2340.**

United States District Court, E. D. Pennsylvania.

Oct. 19, 1981.

278

Benjamin Kuby, Philadelphia, for plaintiffs.

Dawn MacPhee, Asst. U.S. Atty., Peter F. Vaira, Jr., William J. McGettigan, Philadelphia, Pa., M. S. Landman, M. L. Grad, Torts Branch, Civil Division U.S. Dept. of Justice, Washington, D. C., for United States.

Walter R. Milbourne, E. Parry Warner, Philadelphia, Pa., George R. Lyles, Las Vegas, Nev., for Reynolds Electrical.

## MEMORANDUM

SHAPIRO, District Judge.

## INTRODUCTION

Irene Hinkie is the wife of Howard E. Hinkie, Sr. ("Hinkie, Sr."), a former serviceman allegedly exposed to harmful doses of radiation during the 1955 Army nuclear testing in Nevada. She, Paul Hinkie (her son), and the estate of Timothy Hinkie (her deceased son), bring this action against the United States and against Reynolds Electric and Engineering Company ("REECO"). They charge that various injuries sustained by them were caused by defendants' negligence in the conduct of the "Teapot Dome" series of nuclear tests that took place in the Nevada desert in the 1950's. Hinkie, Sr. has stated a claim against REECO but not against the United States. Before us is the United States' motion to dismiss the claims of Irene, Paul and Timothy Hinkie on the ground that under *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the general waiver of sovereign immunity enacted in the Federal Torts Claims Act, 28 U.S.C. § 2671 et seq. ("FTCA"), does not apply to claims asserting injuries to a servicemen incident to military service. For the reasons which follow, defendant's motion will be denied.

## I. FACTS

In ruling on the motion to dismiss, we must accept plaintiffs' allegations of fact. Plaintiffs allege that Hinkie, Sr. enlisted in the United States Army in 1953 and was trained as a pole lineman. (Amended Complaint, ¶ 8). In February 1955, Hinkie, Sr. was ordered to Camp Desert Rock, Nevada to participate in nuclear testing programs. (Amended Complaint, ¶ 9). Hinkie, Sr. neither requested nor volunteered to participate in the Desert Rock nuclear testing program. Between February and June of 1955, he participated in 17 or 18 nuclear tests; he was exposed to nuclear radiation from these tests and other sources of radiation at the Nevada test site. (Amended Complaint, ¶¶ 9, 10). Hinkie, Sr.'s duties in the field included laying and retrieving communication wires, operating a switchboard immediately prior to detonations, observing the nuclear explosion, and walking to "Ground 0." He was exposed to ionizing radiation and inhaled radioactive dust. (Amended Complaint, ¶ 15).

Hinkie, Sr. was not informed of the hazards of exposure to ionizing radiation known to the United States. Hinkie, Sr. was given assurances by the United States, acting through military personnel, that his cumulative exposure was carefully moni-

tored by film badges, which were represented as a reliable means of measuring radiation exposure. (Amended Complaint, ¶ 11). Hinkie, Sr. was never given protective clothing to wear in the field. (Amended Complaint, ¶ 12). The United States omitted to read and/or preserve the records from a large number of the film badges worn by Hinkie, Sr. The United States assured the safety of Hinkie, Sr. with a film badge program that it knew or had reason to know was inadequate. (Amended Complaint, ¶ 18).

Prior to November 1978, the United States never gave Hinkie, Sr. any information on his cumulative radiation exposure from the nuclear tests nor has the United States ever informed Hinkie, Sr. of the adverse health effects which were known by the government to be associated with ionizing radiation. (Amended Complaint, ¶ 13). At the time of the nuclear tests in which Hinkie, Sr. participated, the United States knew, or should have known, that exposure to ionizing radiation would have adverse effects on the health of human beings so exposed. One such adverse effect is the production of genetic defects in offspring conceived after such exposure. (Amended Complaint, ¶¶ 16, 17).

Plaintiffs allege these negligent acts caused perturbations in the molecular substance of Hinkie, Sr., that is, breakages in the chromosomes as well as other forms of chromosomal alteration such as inversions, partial displacements, and deletions not amounting to a total breakage of the chromosomes. (Amended Complaint, ¶ 21, ¶ 33(a)). These perturbations in molecular substance of Hinkie, Sr. eventually formed parts of the bodies of Hinkie's deceased son (Timothy) and his son (Paul) that manifested themselves as defects at the time of their births. (Amended Complaint, ¶ 21).

Plaintiffs further allege that by the above-mentioned acts and omissions, the United States negligently caused the minor plaintiff (Paul Hinkie) to suffer from birth defects including Rubenstein-Taybies syndrome, lack of joints in his thumbs, constant uncontrollable twitching of his eyes, severe mental retardation and photophobia. (Amended Complaint, ¶ 45). It is also alleged that as a proximate result of these acts and omissions on the part of the defendant United States, plaintiffs' decedent (Timothy Hinkie), was born on March 29, 1964 with severe and disabling birth defects, including but not limited to the lack of an esophagus and esophageal fistula, which caused him pain, mental anguish and his death on January 7, 1966. (Amended Complaint, ¶ 39). Finally, it is alleged that as a result of the negligent acts and omissions of defendant United States, plaintiff Irene Hinkie suffered three miscarriages and mental anguish because of the congenital defects of her son Paul and death of her son Timothy.

## II. DISCUSSION

The facts alleged by plaintiffs Irene, Paul and the estate of Timothy Hinkie, with all inferences taken most favorably to them for purposes of defendant United States' motion to dismiss, state causes of action which are not barred by the FTCA on the ground that their injuries are service related.

At common law the United States was immune from civil tort actions for damages. The FTCA, enacted by Congress in 1946, grants federal district courts exclusive jurisdiction of tort actions commenced against the United States. 28 U.S.C. § 1346.[1] The government's consent to such liability is

---

1. 28 U.S.C. § 1346(b) provides:

    (b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

limited by certain explicit statutory exceptions. 28 U.S.C. § 2680.[2] In addition, the Supreme Court has held that it is implicit that the FTCA does not permit government liability for injuries arising out of or in the course of activity incident to service; *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) (no recovery under the FTCA for the death of an Army officer caused by fire in the barracks where he was quartered or for death or injury of members of the armed forces from Army medical malpractice). In *Feres*, the determining factor was the status of the injured party as a member of the armed forces on active duty at the time the cause of action arose.

In *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 669, 97 S.Ct. 2054, 2056, 52 L.Ed.2d 665 (1977), after a National Guardsman was awarded a government pension for injuries received in flight training, he brought an action against the United States and the contractor that manufactured the equipment causing his injuries. The contractor cross-claimed for indemnity from the United States. Summary judgment for the United States was affirmed because the serviceman's claim was barred as incident to military service; therefore, there could be no indemnity with regard to that claim. The Court, reaffirming the *Feres* doctrine stated, "[i]n *Feres v. United States, supra*, the court held that an on-duty serviceman who is injured due to the negligence of Government officials may not recover against the United States under the Federal Tort Claims Act."

The claim barred in *Stencel* was also for injury to an on-duty serviceman. However, the issue before us is the extent to which the *Feres* doctrine bars claims not of the serviceman himself but of the civilian members of his family.

There have been two lines of cases regarding recovery by members of a serviceman's family since *Feres*. Members of a serviceman's family have recovered against the United States for injuries caused directly to them, independent of any injury to the serviceman, if they arise from non-combatant activities. Even the serviceman himself may recover consequential damages for such injuries. *See, Costley v. United States*, 181 F.2d 723 (5th Cir. 1950) (sergeant can maintain FTCA action for injuries to wife resulting from negligence incident to delivery of child in an Army hospital); *Grigalauskas v. United States*, 103 F.Supp. 543 (D.Mass.1951), *aff'd*, 195 F.2d 494 (1st Cir. 1952) (sergeant may recover consequential damages for injuries sustained by infant daughter at Army hospital); *Fournier v. United States*, 220 F.Supp. 752 (D.Miss.1963) (serviceman and daughter recovered for wife's death caused by negligence of government employees at an officers' club); *Herring v. United States*, 98 F.Supp. 69 (D.Colo.1951) (serviceman's wife may recover for injury as a patient in Army hospital; the status of injured party is determinative); *Messer v. United States*, 95 F.Supp. 512 (D.Fla.1951) (sergeant on active duty may recover for injury to wife caused by negligence of Army hospital employees); *Wilscam v. United States*, 76 F.Supp. 581 (D.Hawaii 1948) (Naval officer recovered for death of his minor child caused by negligence of Naval medical corpsman); 31 A.L.R.Fed. 146, 193 (1977).

However, recovery by family members has been barred under the *Feres* doctrine where the cause of action is ancillary or derivative to the serviceman's action for his own injury. In *Feres*, two of the three claims barred were wrongful death actions brought by widows of servicemen who died

---

2. Congress explicitly excepted certain actions related to the United States military in 28 U.S.C. § 2680(j); "[t]he provisions of this chapter and section 1346(b) of this title shall not apply to—

(j) Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war."
This statutory exception is inapplicable here because it is conceded that the incidents complained of were not "combatant activities ... during time of war."

incident to their service.[3] Similarly, actions by family members for alleged injuries suffered themselves by reason of a serviceman's injury, that is, derivative injuries, have been held barred by the *Feres* doctrine. *De Font v. United States*, 453 F.2d 1239 (1st Cir. 1972), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972) (serviceman's wife's action for mental anguish; child for loss of companionship); *Harrison v. United States*, 479 F.Supp. 529 (D.Conn.1979), *aff'd without opinion*, 622 F.2d 573 (2d Cir. 1980), *cert. denied*, 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980) (serviceman's wife for loss of consortium); *Wisniewski v. United States*, 416 F.Supp. 599 (E.D.Wis.1976) (marital disharmony). *See, In re Agent Orange*, 506 F.Supp. 762, 780 (E.D.N.Y.1980).

This case does not fall neatly into either line of cases. It resembles the first line of cases allowing recovery for direct injuries to members of the serviceman's family rather than to the serviceman. Hinkie, Sr. brings no claim against the United States on his own behalf; Hinkie, Sr.'s representative action is a claim for Timothy's death. Paul and Irene claim damages for their own physical injuries. The Hinkies do not claim loss of the services or companionship of Hinkie, Sr. because of an injury to him, nor do they claim a loss because of his injury or death. But in these cases permitting recovery, the serviceman himself had not been directly injured. However, the Hinkies' claims occurred only because of the injury to Hinkie, Sr. The Hinkies' claim is that the chromosomal damage to Hinkie, Sr. caused the injuries to them just as the personal injury to or death of a serviceman gives rise to a cause of action for wrongful death or loss of companionship and consortium. In this respect, it resembles the second line of cases rejecting liability for derivative injuries.

In the following cases, like this case, a direct physical injury to a family member had allegedly been caused by some negligent action or omission of the United States with regard to the serviceman: *Harten v. Coons*, 502 F.2d 1363 (10th Cir. 1974), *cert. denied*, 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975) (wife's action for costs of pregnancy and child raising caused by negligent vasectomy on serviceman); *Monaco v. United States*, No. SC–79–0859 (N.D.Cal. 1979) *on appeal*, No. 79–4787 (9th Cir.) (child's action for congenital birth defects caused by serviceman father's exposure to radiation); *Jessup v. United States*, No. 79–271–TUC–RMB (D.Ariz.1980) (family's action for hepatitis contracted by negligent failure to diagnose serviceman's hepatitis); *In re Agent Orange*, 506 F.Supp. 762, 781 (E.D.N.Y.1980) (children of veterans claim for genetic injury caused by parents' exposure to Agent Orange).

Recovery by family members was held to be barred by the *Feres* doctrine in *Harten, Monaco*, and *Agent Orange, supra*. The *Harten* court, applying the "incident to service test," held that the bar to the serviceman's recovery also barred the wife; the wife's claim was not considered independent of the serviceman's.

In both *Monaco* and *Agent Orange* the courts considered the claim of the serviceman's children independent but held determinative "whether plaintiff's injuries have as their genesis injuries allegedly sustained incident to the performance of military service." *Monaco*, Slip Op. at 3; *Agent Orange*, 506 F.Supp. at 781.

The *Jessup* court reached a contrary result. Applying the criteria stated by the Supreme Court as the rationale for the *Feres* doctrine in *Stencel*, it determined that the reasons underlying the FTCA exception barring servicemen suits were inapplicable to actions by family members for their direct physical injuries.

---

**3.** Some courts have dismissed a survivor's wrongful death action in reliance on *Feres* without discussing whether the action was ancillary or independent in character. *See, e. g. Watkins v. United States*, 462 F.Supp. 980 (S.D.Ga.1977), *aff'd*, 587 F.2d 279 (5th Cir. 1979) (per curiam); *Knight v. United States*, 361 F.Supp. 708 (W.D.Tenn.1972), *aff'd without opinion*, 480 F.2d 927 (6th Cir. 1973); *Coffey v. United States*, 324 F.Supp. 1087 (S.D.Cal.1971), *aff'd*, 455 F.2d 1380 (9th Cir. 1972) (per curiam).

Under the "genesis incident to service" test enunciated in *Monaco* and *Agent Orange*, the chromosome injuries to Hinkie, Sr. bar the family's claims because his injuries are alleged as the cause of their own. However, this oversimplification would avoid the necessary analysis of policies underlying the *Feres* doctrine which the Supreme Court requires in determining its application to novel cases. Therefore, we reject applying the *Feres* bar to every action somehow involving an injured serviceman. That result does not follow from the Supreme Court's analysis of *Feres* in *Stencel*.

In *Stencel*, the Court held that a government contractor could not seek indemnity from the United States for damages to a member of the Armed Forces injured in the course of military service. The three factors justifying the *Feres* doctrine were:

First, the relationship between the Government and members of its Armed Forces is 'distinctively federal in character,' ... it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor was explicated in *United States v. Brown*, [348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954)] ... namely '[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty ....' [citations omitted]. *Stencel*, 431 U.S. at pp. 671–72, 97 S.Ct. at 2058.

After setting out these three factors the Supreme Court stated,

We must therefore consider the impact of these factors where, as here, the suit against the Government is *not brought by the serviceman himself, but by a third party* seeking indemnification for any damages it may be required to pay the serviceman. *Stencel* at 672, 97 S.Ct. at 2058 (emphasis supplied).

Since the *Stencel* decision it is this analysis, not a bare "incident of service" test, which determines whether there is a cause of action by parties other than the serviceman himself. As acknowledged in *Harrison v. United States*, 479 F.Supp. 529, 534 (D.Conn.1979), *aff'd without opinion*, 622 F.2d 573 (2d Cir. 1980), *cert. denied*, 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980), holding a wife's claim for loss of consortium barred by *Feres*,

... by focusing on these factors in *Stencel*, the Supreme Court provides a means of analysis to be employed in deciding whether a party other than a serviceman may recover against the Government for injuries to a serviceman.

*See also, Daberkow v. United States*, 581 F.2d 785, 787 (9th Cir. 1978) ("[i]n cases decided subsequent to *Feres*, both the Supreme Court and this Court have looked to factors underlying the *Feres* decision as the basis for determining, in fact situations not precisely identical with *Feres*, whether the *Feres* rule should apply;" suit by widow of serviceman killed while performing duties incident to military service barred); *Jessup v. United States, supra*.

The first *Stencel* factor results from the fact that state law determines liability under the FTCA. *See*, 28 U.S.C. § 1346(b). As the relationship between the Government and its soldiers is "distinctively federal," it is undesirable that governmental liability should depend on the state where the soldier happens to be stationed at the time of the injury.

This factor carries little weight where the plaintiffs are related to the federal government only by the veteran status of the husband or father. At the time of Hinkie Sr.'s active military duty two of the plaintiffs had not been conceived. The govern-

ment has no more distinctively federal relationship with Irene, Paul or Timothy Hinkie, than with any veteran's family. If the Hinkies were related to a civilian working for the government or for defendant REE-CO, they would not be barred as members of that civilian's family from stating a cause of action for injuries caused by chromosomal damage to the civilian against the United States under the FTCA. Similarly, if a nuclear testing accident caused personal injuries to civilians, the civilians themselves would have a cause of action under the FTCA. In those cases liability would be determined by state tort law. *See, Jessup v. United States*, Slip Op. at 2 (local tort law applies to military dependents injured in military hospitals). We see no reason for a different result in this case.

It is not sufficient that these claims were created because of the alleged negligence of the United States towards an active serviceman. For example, if the negligence of an airplane pilot on active duty causes an airplane crash which causes property damages and personal injuries to civilians, an action lies against the United States under the FTCA. The fact that the civilians have claims for damages against the United States does not create a federal relationship as to them. The result should not differ if the independently injured civilians are members of the pilot's family, even if the pilot was a serviceman on active duty. That is the nature of the case presented to us. We decline to bar this claim by reason of a federal relationship where none exists between plaintiffs and the United States. The first *Feres* factor does not apply to the cause of action asserted by the Hinkies.

The second factor, the availability of the Veterans' Benefits Act which "provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government," *Stencel*, 431 U.S. at 671, 97 S.Ct. at 2058, as a substitute for tort liability, also carries little weight in the

instant circumstances. The basic entitlement, 38 U.S.C. § 331, "for disability resulting from personal injury suffered or disease contracted in line of duty," is payable to "any *veteran* thus disabled." (Emphasis supplied).

It is unclear whether Hinkie, Sr. could recover for disability on the facts alleged here, as the kind of chromosomal damage complained of may not fall within the basic entitlement of the Act. *See*, 38 U.S.C. § 331. Additional compensation for dependents of veterans under 38 U.S.C. § 335 would be available to the plaintiffs herein only if Hinkie, Sr. himself could recover and had a disability rated at not less than 50 per centum. *See*, 38 U.S.C. § 334. Even if these conditions were fulfilled, which appears unlikely, the individual plaintiffs would be receiving nothing for their own physical injuries or for Timothy's death. Rather, they would be recovering only dependents' benefits related to whatever disabling effects Hinkie, Sr. has suffered. Plaintiffs asserted at oral argument that they are not entitled to and have not received any benefits under the Veterans' Benefit Act.[4]

The government argues that in *Stencel*, the Stencel Aero Engineering Corporation, had no right to veterans' benefits. However, in that case the injured *serviceman* did receive substantial veterans' benefits as emphasized by the Court in *Stencel* at 668 and 672, 97 S.Ct. at 2056 and 2058. In *Stencel*, the Act had provided adequately for the injured serviceman himself, and the Court deemed the Act to set an upper limit of government liability for service-connected injuries. Recovery against the government by the third-party tortfeasor was barred; *see, Stencel*, at 673, 97 S.Ct. at 2059. A similar result need not obtain in this case where no government liability under the Veterans' Benefits Act to the veteran or his family has been established of record.[5]

---

4. No claim by Hinkie, Sr. or receipt of veterans' benefits appears of record.

5. In one case applying the *Stencel* factors to bar liability, the court placed great emphasis on the substantial compensation received by plaintiffs. *See, Daberkow v. United States*, 581 F.2d

In *Stencel*, the Court also observed, at 674, that, "[s]ince the relationship between the United States and petitioner is based on a commercial contract, there is no basis for a claim of unfairness in this result." *Stencel* had "sufficient notice so as to take this risk into account in negotiating its contract for the emergency eject system at issue here." *Stencel*, 431 U.S. at 674, n.8, 97 S.Ct. at 2059, n.8. The plaintiffs here are obviously not in a comparable position. In this context, the Veterans' Benefits Act provides an inadequate rationale for barring the cause of action here asserted.

The third factor considered in *Stencel*, the effect of the lawsuit upon military discipline, presents a more difficult issue.

Turning to the third factor, it seems quite clear that where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party. The litigation would take virtually the identical form in either case, and at issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety. The trial would, in either case, involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions. *Stencel*, 431 U.S. at 673, 97 S.Ct. at 2059.

In this case the trial would involve testimony of Armed Service members regarding each other's decisions and, perhaps, the "second-guessing" of military orders. However, we do not find that that fact, standing alone, warrants dismissal under *Feres* or *Stencel*, since it is difficult to see how this lawsuit would adversely effect military discipline. The injuries claimed were not apparent at the time the military orders were given nor soon thereafter. The plaintiffs' injuries, concededly derived from those to Hinkie, Sr. when in military service, manifested themselves decades after his discharge. The program of which the Teapot Dome tests were a part has long since ended. The undermining of discipline or refusal to follow orders present less of a problem because of the time lapse here involved.

Moreover, adverse effects on military discipline must not flow inevitably from the judicial scrutiny of a military order, for such scrutiny is no less involved in other suits under the FTCA which Congress has not barred. An example would be an action by civilians injured by nuclear testing near their residences.

We are aware of the difficulties of proof facing the plaintiffs. *See, Punnett v. Carter*, 621 F.2d 578 (3d Cir. 1980), where the Court affirmed a denial of a preliminary injunction "relating to the long range health effects from radiation exposure to all participants in the Nevada testing from 1951 to the present date." *Punnett, supra* at 580. The Court upheld the lower court's determination that these plaintiffs' probability of success on the merits in establishing causation of genetic defects by nuclear testing did not warrant injunctive relief. But after consideration of the three *Stencel* factors as they apply to this case, we have determined that the *Feres/Stencel* doctrine does not mandate dismissal of the plaintiffs' cause of action. We have not decided whether other exceptions to the FTCA, for example, the discretionary function exception,[6] are applicable to the plaintiffs' claims.

785 (9th Cir. 1978) (widow and child of foreign serviceman compensated under West German law for his death); *but see, Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980) (acceptance of benefits by serviceman's family does not bar FTCA claim by family).

6. The full language of the exception, 28 U.S.C. § 2680(a) (1976), is as follows:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

For a discussion of the possible applicability of this exception to military claims under the

We hold only that plaintiffs' claims against the United States are not barred by the *Feres* doctrine.

FTCA see NOTE, From Feres to Stencel: Should Military Personnel Have Access to

FTCA Recovery? 77 Michigan Law Review 1099 (April 1979).