**Maureen HAMILTON, Administratrix of the Estate of John B. Hamilton, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 79–2238–N.

United States District Court, D. Massachusetts.

April 30, 1983.

Raymond J. Kenney, Jr., Clement McCarthy, Boston, Mass., for plaintiff.

Marianne Bowler, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This suit is a wrongful death action brought by Maureen Hamilton, administratrix of the estate of John B. Hamilton, against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* This court earlier denied a motion to dismiss and the defendant now moves for reconsideration.

In ruling on a motion to dismiss, the court must accept as true the plaintiff's allegations and all reasonable inferences that may be deduced from these allegations. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–349, 15 L.Ed.2d 247 (1965). The plaintiff alleges that on July 2, 1969, her husband, then on active duty with the United States Coast Guard, had a skin lesion on his foot surgically removed at a United States Public Health Service Hospital. The lesion was diagnosed as "pigmented compound nervus." Mr. Hamilton was released from active duty on February 8,

1972. On October 15, 1976 a metastatic, malignant tumor was removed from Mr. Hamilton's left groin. The cancer spread, and Mr. Hamilton died on September 22, 1978. Mrs. Hamilton claims that the defendant negligently and carelessly diagnosed the cancer as a skin lesion in 1969, and that such misdiagnosis and subsequent inadequate treatment proximately caused her husband's death. This court has jurisdiction pursuant to 28 U.S.C. § 1346.

Under the FTCA, the United States is liable for the negligent or wrongful acts or omissions of federal employees under the local law of the place where the tort occurs "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. An exception to this general rule bars any claim "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." *Id.* § 2680(j). In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court interpreted this provision as barring governmental liability for all injuries arising out of or sustained in the course of activity "incident to [military] service." *Id.* at 146, 71 S.Ct. at 159. Courts have applied this test to bar wrongful death actions alleging governmental failure to provide adequate medical care where the injury was "service-connected." In *Levin v. United States,* 403 F.Supp. 99 (D.Mass.1975), the court barred suit by a widow for the "service-connected" suicide of her husband while he was a physician for the Public Health Service. The court held that recovery would be denied even if the suicide resulted from negligence on the part of the government in failing to recognize suicidal tendencies of the decedent, and even if those tendencies had been provoked by the intentional infliction of emotional distress from the decedent's immediate supervisors. *Id.* at 103–104. Similarly, in *Becton v. United States,* 489 F.Supp. 134 (D.Mass. 1980), a naval enlistee's father brought an action under the FTCA seeking damages for the apparent suicide of his son, alleging that the medical naval personnel negligent-

ly failed to provide his son with adequate medical care. The court held that even if the enlistee had been insane when he enlisted, rendering the enlistment void, his activities were so enmeshed with the armed services that he was to be treated as an enlistee and therefore recovery was barred under *Feres. Id.* at 138.

■ Malpractice suits involving medical treatment of active-duty servicemen in military hospitals are barred under the *Feres* doctrine. Several courts have found that such treatment is "incident to service" because the serviceman is taking advantage of medical privileges granted only to military personnel. *Harten v. Coons,* 502 F.2d 1363, 1365 (10th Cir.1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975); *Harreman v. United States,* 476 F.2d 234, 236 (7th Cir.1973); *Lowe v. United States,* 440 F.2d 452, 453 (5th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1973); *Shults v. United States,* 421 F.2d 170, 171–72 (5th Cir.1969). The court in *Hall v. United States,* 451 F.2d 353 (1st Cir.1971) (per curiam), rejected the petitioner's contention that "the various rationale supporting [*Feres*] have been cut away, if not eliminated." *Id.* at 354. The alleged malpractice injury there had been incurred in an army hospital while the plaintiff was on active duty, and was found to be incident to service. In following *Feres,* the court noted that Congress justifiably could have distinguished between suits by a veteran for malpractice occurring in a military hospital after discharge and suits for in-service injury and disability. *Id.*

■ On the other hand, recovery against the United States may be had under the FTCA for negligently-caused death or injury *not* incident to service. *Brooks v. United States,* 337 U.S. 49, 50–53, 69 S.Ct. 918, 919–920, 93 L.Ed. 1200 (1949). For example, in *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the court allowed a discharged veteran to sue the United States under the FTCA for an injury suffered after his discharge as a result of negligent government treatment of a service-connected disability. The

plaintiff had sustained a knee injury in the service, which had been aggravated by an operation in a Veterans Administration hospital. Likewise, injuries sustained by a cadet at the U.S. Air Force Academy were held to be actionable since at the time of the alleged negligent acts, the cadet was not on active duty or subject to military discipline. *Fischer v. United States,* 451 F.Supp. 918 (E.D.N.Y.1978). In *Betesh v. United States,* 400 F.Supp. 238 (D.D.C. 1974), government doctors examined a serviceman as part of a preinduction physical and found abnormalities in a chest x-ray, but failed to notify the plaintiff. The abnormalities resulted in a malignant tumor. The court refused to bar the suit, holding that the plaintiff was not injured incident to service since he had been rejected based on the preinduction physical, and therefore never entered active-duty status. These authorities indicate that the applicability of the *Feres* test depends upon the injured's military status at the time of injury. *Harten v. Coons,* 502 F.2d at 1365. *Thornwell v. United States,* 471 F.Supp. 344, 350 (D.D.C.1979). Since Mr. Hamilton was on active duty at the time of the alleged misdiagnosis in 1969, his injury plainly was "incident to service." By electing to have the surgery performed in the Public Health Service Hospital, Mr. Hamilton took advantage of a medical privilege granted only to military personnel. "He would not have been admitted for medical treatment except for his military status.... It inescapably follows that whatever happened to him in that hospital and during the course of that treatment had to be in the course of activity incident to service." *Shults v. United States,* 421 F.2d at 171–72.

This conclusion ordinarily would suffice to render an FTCA claim non-actionable. Yet several courts have recently considered it appropriate, in FTCA suits brought by parties other than a serviceman himself, to inquire whether a mechanical application of the *Feres* test comports with the underlying purposes of the Act. *E.g., Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 670, 97 S.Ct. 2054, 2057, 52 L.Ed.2d

665 (1977); *Harrison v. United States,* 479 F.Supp. 529, 534 (D.Conn.1979), *aff'd without opinion,* 622 F.2d 573 (2d Cir.), *cert. denied,* 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980). In cases decided subsequent to *Feres,* both the Supreme Court and other courts have looked to factors underlying the *Feres* decision as the basis for determining, in fact situations not precisely identical with *Feres,* whether the *Feres* rule should apply. *Daberkow v. United States,* 581 F.2d 785, 787 (9th Cir. 1978).

The Supreme Court in *Stencel* discussed the three policy factors underlying *Feres.*[1] First, the Court noted that the relationship between the government and members of the armed forces is "distinctively federal in character." 431 U.S. at 671, 97 S.Ct. at 2057, *quoting Feres,* 340 U.S. at 143, 71 S.Ct. at 157. Since state law determines liability under the FTCA, the *Feres* doctrine's prohibition on service-related suits maintains the federal relationship by freeing government liability from the "fortuity of where the soldier happened to be stationed at the time of the injury." 431 U.S. at 671, 97 S.Ct. at 2057. Second, the Veterans' Benefit Act has established a "no-fault" compensation plan, independent of any government negligence, for injured servicemen as a substitute for tort liability. *Id.* Finally, the Court discussed the negative impact of such suits on military disci-

pline, noting "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty...." *Id.* at 671–72, 97 S.Ct. at 2057–2058, *quoting United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 145, 99 L.Ed. 139 (1954). A suit brought by a serviceman or a third party "would, in either case, involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions." *Id.* 431 U.S. at 673, 97 S.Ct. at 2058.[2]

■ The policy reasons underlying *Feres* mandate dismissal of plaintiff's claim. First, allowing her to bring suit would infringe on the federal relationship between the government and members of the armed services, since state law would determine the government's liability. *Id.* at 671, 97 S.Ct. at 2058. This court does not address the second policy factor, since neither party has indicated whether plaintiff is receiving or would be eligible for benefits under the Veterans' Benefit Act. However, the third policy factor, the upholding of military discipline, is determinative. Mrs. Hamilton argues that *Feres* should not bar her action because the military-discipline rationale is not relevant to the facts of this case.[3]

---

1. The Court there held that the United States was not liable under the FTCA to indemnify a third party for damages paid by it to a member of the armed forces injured in the course of military activity.

2. The military-discipline rationale is the one most often cited for applying the "incident to service" rule. In *Kennedy v. Maginnis,* 393 F.Supp. 310 (D.Mass.1975), a former serviceman sued a Navy physician who had treated him while he was a patient at a naval hospital before separation from service. The serviceman argued that his suit would not threaten military discipline because he was not a member of the military when he filed suit. In granting summary judgment for the defendant, the court reasoned that

   "[t]he basis of *Feres, Van Buskirk* and their progeny was that the danger of potential litigation by servicemen either against the Government or against fellow members of

the armed forces would undermine the foundations of military discipline and possibly thwart the orderly functioning of the armed services. That same menace exists regardless of whether a serviceman's suit is brought immediately, or whether its initiation is delayed until the potential plaintiff is discharged."

   *Id.* at 312.

3. Recovery by family members of servicemen has been barred under the *Feres* doctrine where the cause of action is ancillary to or derivative of the serviceman's action for his own injury. *E.g., Harten v. Coons,* 502 F.2d 1363 (10th Cir.1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975) (wife's action for costs of pregnancy and child raising caused by negligent vasectomy on serviceman); *De Font v. United States,* 453 F.2d 1239, 1249 (1st Cir.1972) (per curiam) (widow's claim for damages based on mental anguish arising from

While her suit may not have a direct effect on the maintenance of military discipline, it could have an indirect impact by encouraging litigation by other third parties. According to *Stencel*, such suits could hinder the functioning of the military and threaten military discipline as severely as a suit brought by a serviceman himself.[4] In the instant case, a trial would involve testimony of Public Health Service personnel and armed forces members regarding each other's decisions, and possibly even the "second-guessing" of military orders. Thus, the policy reasons underlying *Feres* also countenance dismissal of the present action.

Finally, plaintiff claims that a separate and independent cause of action came into existence after Mr. Hamilton's discharge. In *Thornwell v. United States,* a former serviceman brought an action alleging covert administration of LSD, harassment, interrogation and imprisonment during his active military service, as well as concealment and failure to provide follow-up examination and treatment after discharge. Applying *Feres,* the court dismissed the claims for all injuries sustained while plaintiff was in the service. 471 F.Supp. at 348–49. The court ruled, however, that *Feres* did not bar the claims based on the defendants' alleged negligence after his discharge. The court stressed that the plaintiff had stated two distinct causes of action: first, that the defendants had intentionally harmed him while he was on active duty, and second, that they then failed to exercise

their duty of care by neglecting to rescue him from the position of danger which they had created. The defendants thus exhibited "two distinctly separate patterns of conduct, one intentional and [one] negligent." *Id.* at 351. While the court did not discuss whether the negligent conduct commenced prior to plaintiff's discharge, it found that where the government knew or should have known that treatment was dangerous and likely to result in post-discharge injury, failure to provide proper follow-up care after discharge is actionable. *Id.; see also Schwartz v. United States,* 230 F.Supp. 536 (E.D.Pa.1964).

■ Unlike the plaintiffs in *Thornwell* and *Schwartz,* Mrs. Hamilton cannot state a separate cause of action concerning the alleged failure to provide follow-up care to her husband. In *Thornwell,* the government deliberately administered LSD to the plaintiff, knowing the risks involved. The Navy physicians in *Schwartz* intentionally injected a dangerous radioactive drug in the plaintiff's sinuses, and failed to provide follow-up care despite knowledge of the drug's risks and the petitioner's complaints of further sinus irritation. The instant case is distinguishable from *Thornwell* and *Schwartz* in that there is no indication that the Public Health Service physicians intentionally misdiagnosed Mr. Hamilton's cancer and then negligently failed to provide follow-up care. Mrs. Hamilton's claim is based on the negligent misdiagnosis of the

---

observations of inadequate care given husband); *In re Agent Orange,* 506 F.Supp. 762, 780 (E.D.N.Y.1980) (claim by veterans' children for generic injury caused by parents' exposure to Agent Orange); *Monaco v. United States,* No. 79–0859 (N.D.Cal.1979), *on appeal,* 661 F.2d 129 (9th Cir.1981) (child's action for congenital birth defects caused by serviceman father's exposure to radiation). That such third party suits would have an effect on military discipline was determined in *Stencel.* "[I]t seems quite clear that where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought directly or by a third party." 431 U.S. at 673, 97 S.Ct. at 2058. In each case, the litigation would be almost identical in form, and governmental liability would be at stake. *Id.*

4. *Compare Hinkie v. United States,* 524 F.Supp. 277 (E.D.Pa.1981), in which the court denied defendant's motion to dismiss a complaint by members of a serviceman's family affected by radiation to which the serviceman had been exposed during Army nuclear testing. The court doubted that the suit would adversely affect military discipline because the injuries, rather than being apparent at or near the time the military orders were given, did not manifest themselves until decades after the serviceman's discharge. *Id.* at 284. "The undermining of discipline or refusal to follow orders present [sic] less of a problem because of the time lapse here involved." *Id.*

cancer. As the court in *Thornwell* explained, "a mere act of negligence which takes place while the plaintiff is on active duty and which then remains uncorrected after discharge, is not grounds for suit." 471 F.Supp. at 351. Accepting plaintiff's allegations as true, the defendant's failure to provide follow-up care to Mr. Hamilton was an act of negligence stemming directly from the negligent diagnosis. Therefore, Mrs. Hamilton has not stated a separate and distinct claim actionable under the FTCA. *See Bailey v. Van Buskirk,* 345 F.2d 298 (9th Cir.1965), *cert. denied,* 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966); *Becton v. United States,* 489 F.Supp. at 138; *Kennedy v. Maginnis,* 393 F.Supp. at 311.

Accordingly, defendant's motion to dismiss is granted. Judgment is entered in accordance with this decision.