Theodore L. LOMBARD, et al., Appellants,

v.

UNITED STATES of America, et al.

No. 81–2261.

United States Court of Appeals, District of Columbia Circuit.

Argued May 19, 1982.

Decided Sept. 14, 1982.

**21.** *Id.*

**25.** *Id.*

Herbert B. Newberg, Philadelphia, Pa., with whom Peter R. Kolker, Washington, D. C., and John S. Anderson, Georgetown, Mass., were on the brief for appellants, Judith K. Munger, Washington, D. C., entered an appearance for appellants.

Deborah Ratner, Dept. of Justice, Washington, D. C., of the bar of the Supreme Court of California, pro hac vice by special leave of Court, with whom Jeffrey Axelrad and J. Paul McGrath, Dept. of Justice, Washington, D. C., were on the brief for appellees.

Before MacKINNON, GINSBURG and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

Opinion concurring in part and dissenting in part filed by Circuit Judge GINSBURG.

MacKINNON, Circuit Judge.

Theodore Lombard, his wife Ruth and their four children appeal from a District Court decision dismissing for lack of subject matter jurisdiction a claim for damages to themselves and to their children which allegedly resulted from Lombard's exposure to radiation during military service. For the reasons set forth below, we affirm, 530 F.Supp. 918, the decision of the District Court.

### I. BACKGROUND

Between 1944 and 1946, Lombard served in the United States Army at Los Alamos, New Mexico, where he worked on the "Manhattan Project." During this period, Lombard, without benefit of protection, allegedly handled plutonium, uranium, and other radioactive substances. Lombard charges that the Army knew such handling might lead to serious health problems, as well as to genetic damage that could debilitate future offspring through inheritance, but that the Army nonetheless permitted him to be exposed to the radiation without warning him of the risks involved. The Army is alleged to have compounded their error by continuing for years after the War to hide information from Lombard on the deleterious effects of radiation contamination.

The Army's actions allegedly caused Lombard to suffer both physical and genetic damage. His children, all born since the War, have in turn allegedly developed ge-

netic defects of varying severity. Ruth Lombard, meanwhile, has allegedly suffered mental anguish and emotional distress through caring for her ailing husband and children.

All members of the Lombard family have sued the United States Government, numerous federal agencies, and numerous federal officials both in their official and individual capacities,[1] seeking damages under the Federal Tort Claims Act ("Tort Claims Act"), 28 U.S.C. § 1346(b),[2] the First, Fifth, Ninth, and Tenth Amendments, 42 U.S.C. § 1985

(3),[3] 42 U.S.C. § 1986,[4] and a number of state law provisions. The District Court dismissed appellants' complaint *in toto* on the grounds that *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), precluded recovery by any of the named plaintiffs on any of the theories presented. The District Court also granted the motion to strike those defendants named individually from the complaint on the grounds that the complaint did not allege any specific acts on their part for which relief could be granted. This appeal followed.

1. The named individual defendants were Richard Schweiker, Secretary of Health and Human Services; James B. Edwards, Jr., Secretary of Energy; Caspar W. Weinberger, Secretary of Defense; Lt. Gen. H. A. Griffith, Director, Defense Nuclear Agency; Max Cleland, former Administrator of Veteran's Affairs; John F. Ahearne, former Chairman of the Nuclear Regulatory Commission; William French Smith, Attorney General; and Charles F. C. Ruff, former United States Attorney for the District of Columbia.

2. 28 U.S.C. § 1346(b) provides:

   (b) Subject to the provisions of Chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

3. 42 U.S.C. § 1985(3) provides:

   (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or

advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

4. 42 U.S.C. § 1986 provides:

   Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

## II. *Feres* AND ITS PROGENY

It is well established that the United States, as sovereign, "is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1975). Any waiver of this traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1968); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

The Tort Claims Act is one such explicit waiver. It provides that in most instances of tortious conduct, the "United States shall be liable, respecting . . . tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The application of the Act has been construed in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Laird v. Nelms,* 406 U.S. 797, 799, 92 S.Ct. 1899, 1900, 32 L.Ed.2d 499 (1971); and *Scanwell Laboratories, Inc. v. Thomas,* 521 F.2d 941, 947 (D.C.Cir.1975). Notwithstanding the language of the statute, however the Supreme Court has determined that the Act does not waive sovereign immunity for suits brought by servicemen for "service connected injuries." *Feres v. United States, supra; Hatzlachh Supply Co., Inc. v. United States,* 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980); *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1976). In *Feres v. United States, supra,*

the Court held without dissent that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. The Court noted that though the legislative history of the Tort Claims Act did not specifically refer to the exclusion of suits by servicemen injured on active duty, it was nevertheless discernible from the scheme of the Act itself that Congress did not intend to waive immunity for such suits. On this point the Court remarked, "[i]f Congress had contemplated that this Tort Act would be held to apply in cases [involving injuries incident to military service] . . ., it is difficult to see why it should have omitted any provision to adjust . . . [compensation and pension remedies to tort remedies]." *Id.* at 144, 71 S.Ct. at 158.

This so-called *"Feres* Doctrine" has been followed by subsequent decisions of the Supreme Court and other federal courts.[5] Three factors typically underlie the doctrine's application. First, there is the interpretation of the statute which flows from the "distinctively federal nature" of the relationship between the federal Government and members of its Armed Forces. This supports an interpretation that Congress did not intend the Tort Claims Act to be applicable to service-related injuries because the Act provides that "the law of the place where the act or omission complained of occurred . . ." shall be applied and "it would make little [legislative] sense to have the Government's liability to members of the Armed Services dependent on the fortuity of [the provisions of law applicable in the locality] where the soldiers happened to

---

5. *See, e.g., Hatzlachh Supply Co., Inc. v. United States, supra; Stencel Aero Engineering Corp. v. United States, supra; Laswell v. Brown,* 683 F.2d 261 (8th Cir. 1982); *Labash v. United States Department of the Army,* 668 F.2d 1153 (10th Cir. 1982); *Jaffee v. United States,* 663 F.2d 1226 (3rd Cir. 1981) (en banc); *Miller v. United States,* 643 F.2d 481, 490 (8th Cir. 1980) (en banc); *Hunt v. United States,* 636 F.2d 580 (D.C.Cir.1980); *Misko v. United States,* 453 F.Supp. 513 (D.D.C.1978), *aff'd,* 593 F.2d 1371 (D.C.Cir.1979); *Daberkow v. United States,* 581 F.2d 785 (9th Cir. 1978); *Henry v. Textron, Inc.,* 577 F.2d 1163 (4th Cir. 1978); *Jackson v. United States,* 573 F.2d 1189 (Ct.Cl.1978); *Henninger v. United States,* 473 F.2d 814 (9th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); *United States v. Lee,* 400 F.2d 558 (9th Cir. 1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969); *Rotko v. Abrams,* 338 F.Supp. 46, 47 (D.Conn. 1971), *aff'd,* 455 F.2d 992 (2d Cir. 1972) (per curiam).

be stationed at the time of the injury."[6] *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671, 97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1976). *See Feres v. United States, supra,* 340 U.S. at 143, 71 S.Ct. at 157.

The second factor supporting the *Feres* interpretation is the existence of the Veterans' Benefits Act, 38 U.S.C. §§ 301–1008, a form of no fault compensation scheme for servicemen, akin to workmen's compensation laws, that substitutes for tort liability. Pursuant to this Act, a serviceman is eligible for "simple, certain, and uniform compensation" for injuries occurring during his service, regardless of fault. *Hatzlachh Supply Co., Inc. v. United States,* 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980); *Jaffee v. United States,* 663 F.2d 1226, 1232 (3rd Cir. 1981) (en banc).

The final factor underlying *Feres* interpretation of the statute, as articulated most clearly by the Supreme Court in the subsequent case of *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 145, 99 L.Ed. 139 (1954), is the

> peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.

*See also Stencel Aero Engineering Corp. v. United States, supra,* 431 U.S. at 671–72, 97

S.Ct. at 2057–58; *United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 1857, 10 L.Ed.2d 805 (1963).[7] That some rare cases might be long delayed in filing does not diminish this factor—in most cases lawsuits involving military personnel would occur if at all shortly after the event. *Cf.* 28 U.S.C. § 2401(b).[8] In any event, liability should not depend on delay in prosecuting a claim.

In addition to its application to cases brought by servicemen concerning injuries suffered while on active duty in the armed services, *Feres* has also been held to bar cases brought by third parties (usually family members) where the claim *originates with or derives from* an injury to a serviceman incident to military service.[9] In such cases, relief is "unavailable for essentially the same reasons that the direct action [was] . . . barred in *Feres." Stencel Aero Engineering Corp. v. United States, supra,* 431 U.S. at 673, 97 S.Ct. at 2058.

> [W]here the case concerns an injury sustained by a soldier while on duty, the effect of action upon military discipline is identical whether the suit is brought by the soldier directly *or by a third party.* The litigation would take virtually the identical form in either case, and at issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety.

*Id.* (emphasis added).

Of central importance in scrutinizing cases against the Government in light of

---

**6.** One jurisdiction might deny recovery completely if Lombard were deemed contributorily negligent. Another would apply comparative negligence principles and might permit a 75% recovery, or higher.

**7.** The factors underlying *Feres* were most recently discussed by this Court in *Hunt v. United States, supra.*

> [T]he protection of military discipline . . . serves largely if not exclusively as the predicate for the *Feres* doctrine. Although the [Supreme] Court has woven a tangled web in its discussion of the "distinctly federal" notion and of the alternative compensation system, it has not wavered on the importance of maintaining discipline within the armed forces. The Court has found it unseemly to have military personnel, injured incident to their service, asserting claims that question

> the propriety of decisions or conduct by fellow members of the military. Only this factor can truly explain the *Feres* doctrine and the crucial line it draws . . . .

636 F.2d at 599.

**8.** 28 U.S.C. § 2401(b) (1978) provides:

> . . . (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

(*Cf.* 62 Stat. 971, 92 Stat. 2389).

**9.** *See* note 16 *infra.*

*Feres* is an adherence to "the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty." *United States v. Brown, supra,* 348 U.S. at 113, 75 S.Ct. at 145. Thus, in *Henry v. Textron, Inc.,* 577 F.2d 1163 (4th Cir. 1978), for example, the Government was held immune from liability to a third party defendant and two National Guard helicopter pilots killed while on active duty as a result of allegedly defective helicopter construction by the third party defendant.

In *United States v. Brown, supra,* meanwhile, a *discharged* veteran suffered an injured left knee due to negligent treatment by doctors in a Veterans Administration hospital. Though the Government urged that the ensuing tort suit be dismissed as being barred by *Feres,* the Supreme Court ruled that the serviceman's injury was *not* incident to military service, and suit was accordingly authorized under the Federal Tort Claims Act.

### III. DISCUSSION OF APPELLANTS' FEDERAL TORT CLAIMS

■ The sole substantive issue in this appeal is whether or not *Feres* may be applied across the board to dismiss the various claims presented by the Lombards. For the reasons set forth below, we find that *Feres does* bar such claims.

### A. *Theodore Lombard*

Theodore Lombard attempts to circumvent *Feres* by arguing that the Army committed two *separate torts* in his case: (1) the intentional tort of exposing Lombard to radioactive substances while on active duty at Los Alamos; and (2) the negligent tort of failing to warn Lombard after his discharge from service of the hazards of radiation poisoning. This second tort, he claims, occurred wholly *after* his tour of duty, and as such is actionable (i.e., not barred) by *Feres.*

Lombard's claim in this respect claims support from the district court opinion of

this Circuit in *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979). In *Thornwell,* a serviceman was given LSD in an effort to get him to confess to the theft of various classified documents. He did not learn that he had been given the drug until some sixteen years after the incident. On being so informed, he sued the Government for all the injuries he had suffered because of the treatment and for the Government's subsequent failure to inform him of that exposure.

The District Court held that *Feres* barred recovery for all claims relating to the original administration of the drug, but that recovery was due for the negligence that occurred *since* Thornwell left the service. The court found that there were two separate torts, one intentional and one negligent, the second occurring "in its entirety" after Thornwell had attained civilian status. 471 F.Supp. at 351.

*Thornwell* is distinguishable from the case at bar.[10] Here, the alleged failure to warn did not occur "in its entirety" after Lombard's discharge. As noted in Part I, Lombard concedes that the Army knew of the potential dangers involved in exposing servicemen to radioactive substances at the time of the exposure itself. The negligent act of "failing to inform," then, *began at the time of initial exposure and continued through to the present.* We are not dealing with two separate torts, therefore, but one *continuous* tort.

It is apparent that Lombard believes the failure to warn occurred early on since the complaint alleges that:

> [a]t all relevant times from 1944 to the present, defendants, their agents and representataives [sic], and their predecessor agencies and officers . . ., acting jointly and severally, and in conspiracy with each other, *have fraudulently concealed information concerning the increased risk of somatic and chromosomal injury to persons such as Theodore Lombard and*

---

**10.** In addition, at least one other circuit has determined that the decision in *Thornwell* was "inconsistent with *Feres,*" and was as such incorrectly decided. *See Laswell v. Brown,* 683 F.2d 261, at 267 (8th Cir. 1982).

*Ruth, his wife, and their family, by reason of work performed at or for the Los Alamos facility during the period 1944–1946 without protection from radiation exposure.*

Complaint, ¶ 35 (JA at 11a) (emphasis added).

It is thus unquestioned that Lombard's "injur[y] ... *did* ... arise out of or in the course of military duty." *United States v. Brown, supra,* 348 U.S. at 113, 75 S.Ct. at 145 (emphasis added). Accordingly, the Army's negligent act is barred from suit by *Feres.*[11]

A look at the factors discussed in Part II *supra* underlying *Feres* and its progeny demonstrates that our conclusion here is squarely in line with the Supreme Court concerns set out in that opinion. As noted, the Court barred suit in *Feres* for three reasons: (1) "[t]he relationship between the Government and the members of its armed forces is 'distinctively federal in character,'"; (2) Congress has provided by statute a "'simple, certain, and uniform'" system of compensation for those injured in military service; and (3) tort actions between members of the armed services have never been allowed.

In the case at bar, to allow Lombard to recover would be to contravene all three of the basic principles that underlie *Feres.* First, Lombard's suit is clearly "federal in character and Congress never intended to submit armed forces personnel to the vagaries of over 50 different species of local law." Second, Lombard may seek recovery on his claim pursuant to the Veterans' Benefit Act, 38 U.S.C. § 301 *et seq.* Finally, his suit is undeniably one between members of the armed services. To rule on the merits of that suit would embroil the Court in passing on matters of intramilitary concern, something the Supreme Court clearly sought to avoid.

A number of courts have examined cases involving servicemen and the "failure to warn" theory of negligence, and have applied *Feres* in dismissing said cases for want of subject matter jurisdiction.

In a recent decision by the Eighth Circuit, *Laswell v. Brown,* 683 F.2d 261 (8th Cir. 1982), a serviceman exposed to three atomic tests in 1947–48 on Eniwetok Atoll in the Marshall Islands alleged a post-discharge failure to warn concerning the known dangers of radiation poisoning. Judge Stephenson writing for a unanimous court, held that claim barred by *Feres.*

> We agree ... that the plaintiff's allegations constitute a continuing tort.... [T]he plaintiff's claim[ ] founded upon the FTCA for ... negligent failure to warn or treat [is] not within the waiver of sovereign immunity contained in the FTCA and, therefore, must be dismissed for lack of subject matter jurisdiction. [citing cases].

*Id.* at 267.[12]

In *Kelly v. United States,* 512 F.Supp. 356 (E.D.Pa.1981), a serviceman exposed to

---

**11.** The dissent contends that

the failure to warn a veteran of radiation's potential effects might constitute an independent, post-service negligent act if the government learned of the danger after the veteran left the armed forces,

Dissent at 230, and thus that Lombard should be afforded an opportunity "to further develop and restate his claim." Dissent at 231.

This contention is misguided. There is no allegation that the Government learned of the hazards of radiation poisoning *only after* Lombard left the service. Indeed, the Lombards make it clear in their complaint that the Army was fully aware from 1944 onward that there were serious risks inherent in Lombard's work. *See, e.g.,* paragraph 35, *supra.*

**12.** Despite the fact that *Laswell* deals extensively with the post discharge failure to warn claim of a serviceman knowingly exposed to radiation in World War II, the dissent evidently does not view the Eighth Circuit's discussion of that claim as relevant to the case at bar. *See* Dissent at 229 n.4, which, in purporting to summarize *Laswell,* fails to mention that the court there held that the claim of negligence because of an alleged failure to warn after discharge was barred by *Feres.* The dissent's approach is deficient, in that (a) the injury suffered by Charles Laswell is for the purposes of this analysis identical in time and nature to that suffered by Theodore Lombard; and (b) the failure to warn either Laswell or Lombard began at the precise moment of their respective initial exposures and has continued on to the present. The "failure to warn" considerations

thermonuclear radiation during military tests in the South Pacific charged that the Army had been negligent in not warning him after he had been discharged of the potential harmful side-effects of that testing. Plaintiff argued a "separate tort" cause of action in the same fashion as Lombard in the instant case. The District Court rejected the argument, saying,

> I am not persuaded that [plaintiff's] complaint here alleges post-discharge tortious conduct which is factually distinct from the allegedly tortious conduct which occurred while he was still in the military.... In effect, [plaintiff's] complaint is that he was exposed to nuclear radiation without adequate safeguards and without warning of the possible adverse effects. I see no essential difference between defendant's failure to warn him initially and their failure to warn him thereafter. [Plaintiff] avers that the defendants knew at the time he was exposed that there was a grave risk of injury to him, but nonetheless gave orders which resulted in his exposure. Accordingly, under [plaintiff's] own theory, the duty to warn him of the danger existed at the time he was first exposed, and the defendant's subsequent failure to warn him was but a continuation of the original wrong. 512 F.Supp. at 360–61.

Similar conclusions were reached in *Schnurman v. United States,* 490 F.Supp. 429 (E.D.Va.1980) and *Stanley v. CIA,* 639 F.2d 1146 (5th Cir. 1981). *Schnurman* involved a serviceman exposed to mustard gas while testing some experimental anti-chemical warfare clothing. In dismissing the complaint based on post-discharge failure to warn, the court remarked,

> Disallowing recovery for an in-service tort under *Feres,* but allowing recovery for a failure to monitor and treat injuries resulting from the same tort would leave very little of *Feres* immunity, especially

in both cases being thus interchangeable, this court may not ignore, as the dissent would prefer, the Eighth Circuit's directive on the failure to warn issue.

in cases where injuries do not manifest themselves until after a serviceman's discharge. 490 F.Supp. at 437.

*Stanley,* meanwhile, involved a serviceman who voluntarily took some LSD as part of the Army experimentation on the effects of various drugs. Discovering in later years that such experimentation had deleterious side-effects, the serviceman sued the Army on a failure to warn theory. The Fifth Circuit dismissed the charge, both as it pertained to negligence committed during the actual experiment and to the period after Stanley was discharged. Essentially, the court chose to follow *Schnurman* over *Thornwell* in holding that the failure to warn was at all stages part and parcel of one continuous tort on the Army's part, and was thus barred from suit by *Feres.* "Stanley has alleged merely an act of negligence which occurred while he was on active duty, the effects of which remained uncorrected after discharge." 639 F.2d at 1154.

Other cases which further support the dismissal of the claim here include *Henning v. United States,* 446 F.2d 774 (3d Cir. 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972) (barred suit for failure to inform veteran of his true condition disclosed by X-rays which had been taken while he was on active duty); *Wisniewski v. United States,* 416 F.Supp. 599 (E.D.Wis. 1976) (denied veteran's claim based on a failure to provide him, after discharge, with results of a blood test taken while he was in the service); *Broudy v. United States,* 661 F.2d 125, 129 (9th Cir. 1981) (in cases of radiation, a failure to warn is only actionable "if the Government learned of the danger after [the serviceman] left the service."); and even *Thornwell, supra,* 471 F.Supp. at 351. ("[I]t is clear at the very least that a mere act of negligence which takes place while the plaintiff is on active duty and which then remains uncorrected after discharge is not grounds for suit.") [13]

13. *See also Reynolds v. Department of the Navy,* C–2–75–427, *Order,* at 2 (S.D.Ohio, Feb. 8, 1976), where the court dismissed a complaint alleging government liability for post-discharge

In sum, Lombard's claims under the Federal Torts Claims Act were properly dismissed as being in contravention of the *Feres* doctrine.

## B. *Ruth Lombard and the Lombard Children*

Ruth Lombard and the Lombard children contend that even if Lombard himself is barred from suit by *Feres*, they are eligible to recover under the Tort Claims Act for the injuries *they* have incurred as a result of Lombard's exposure to radiation at Los Alamos since they never served in the military, and since the children were all born after Lombard left military service. While these allegations are more compelling than those by Lombard discussed above, the case law nonetheless supports a finding that said claims were properly dismissed by the District Court.

It is well established that *Feres* bars recovery by family members where the cause of action is ancillary or derivative to the serviceman's action for his own injury received incident to military service. *See* discussion *infra*. Indeed, in *Feres* itself, two of the three suits barred were wrongful death actions instituted on behalf of widows of servicemen who had died from injuries suffered incident to service.

This rule has also been specifically applied in two cases involving genetic defects developed in children as a result of exposure of their respective serviceman fathers to genetically mutating agents of one kind or another.

In *Monaco v. United States*, 661 F.2d 129 (9th Cir. 1981), the Ninth Circuit, dismissing claims for alleged genetic injury to a child resulting from a parent's in-service exposure to radioactive substances during work on the "Manhattan Project," noted that "but for" the injury sustained by the father while in the service, the child would not have sustained the injury at issue. The child's injury, having its "genesis" in the

failure to warn about radiation exposure on the ground that "any duty to warn must arise out

non-actionable injury of the father, was similarly non-actionable pursuant to *Feres.*

> Whether [plaintiff's] injury occurred when she was born with a birth defect or when her father suffered chromosomal change, the allegedly negligent act drawn into question was performed while [her father] was in the service. Thus, just as [her father] could not recover on the grounds that his injury was post service, we cannot grant [plaintiff] recovery on these [Federal Tort Claims] grounds.

661 F.2d at 133.

A similar case, *In re Agent Orange Product Liability Litigation*, 506 F.Supp. 762 (E.D.N.Y.1980), involved claims filed, *inter alia*, by genetically deformed children whose fathers allegedly had been exposed to various herbicides sprayed by the Army in Vietnam. In dismissing the children's claims pursuant to the Torts Claims Act, the District Court remarked:

> The injuries alleged by the children had their genesis in the exposure of their parents and, assuming that Agent Orange could produce the genetic changes alleged, the injuries were inflicted on the serviceman at the time of exposure. Thus, although Agent Orange may ultimately be found to have caused injuries in subsequently conceived children, *those injuries, nevertheless, arose out of and were incident to the service of the parent* .... For these reasons, the Court holds that the children's claims for genetic injuries and birth defects from Agent Orange exposure of their veteran parents are injuries suffered "incident to and arising out of service" and cannot be recompensed in an action maintained directly against the government.

506 F.Supp. at 781 (emphasis added). *See also Laswell v. Brown, supra*, 683 F.2d at 269. (As regards negligence claims brought by children whose genetic injuries developed after their father had left the service, "the proper focus in applying the *Feres* doctrine is not the time of injury but the

of events which occurred during and incident to ... military service."

time of the negligent act which took place during their father's military service.") [14]

The courts in both *Monaco* and *Agent Orange* found that permitting the aggrieved third parties to recover would embroil the courts in a matter that was "distinctively federal in character," and that was basically, though indirectly, "between members of the armed services." Such involvement was deemed impermissible as being in contravention of *Feres*.

> [W]here the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly *or by a third party.* The litigation would take virtually the identical form in either case, and at issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety.

*Monaco v. United States, supra,* 661 F.2d at 133–34, *quoting Stencel Aero Engineering Corp. v. United States, supra,* 431 U.S. at 673, 97 S.Ct. at 2058 (emphasis added). The fact in both *Monaco* and *Agent Orange* that children of injured servicemen had no immediate alternative recourse because of the barred tort action was deemed unfortunate, but on balance not sufficient to permit recovery. "To hold otherwise," the court concluded in *Agent Orange,* "might open the door for governmental liability to countless generations of claimants having ever diminishing genetic relationship[s] to the person actually injured." 506 F.Supp. at 781. In addition, a contrary holding would contravene the implicit congressional intent described in *Feres* to provide a general exemption to the Tort Claims Act in cases involving "injuries incident to military service."

The one case with an opinion filed *contra* on the question of possible recovery under the Torts Claims Act for children affected by genetic injuries suffered by their father during military service is *Hinkie v. United States,* 524 F.Supp. 277 (E.D.Pa.1981), a case which is not yet final in the Eastern District of Pennsylvania.[15] In *Hinkie,* the District Court, in refusing to dismiss the complaint, held that a given fact situation must satisfy all three criteria set out in *Feres* before the suit in question would be barred. It then ruled oversimplistically that since Hinkie's wife and children had never been members of the armed services, and because no alternative remedy for *their* genetic damage was readily discernible, that the *Feres* criteria were not met. It, accordingly, held that the suit was not barred.[16]

While some of the analysis in *Hinkie* may at first blush seem to have some plausibility, its conclusion flows from a fatally flawed premise. In *Hinkie,* the court describes "two lines of cases regarding recovery by members of a serviceman's family since *Feres.*" 524 F.Supp. at 280. First, "[m]embers of a serviceman's family have recovered against the United States for injuries caused *directly to them,* independent of injury to the serviceman, if they arise from non-combatant activities. . . . [citing cases]." *Id.* (emphasis added) Second— and on the other hand—"actions by family members for alleged injuries suffered them-

14. The children in *Laswell* alleged only that they had incurred the *risk* of genetic injury as a result of their father's exposure to radiation, not that they had as yet actually suffered any palpable harm. Though the court dismissed those allegations as being too speculative, it suggested in no uncertain terms that had the Laswell children already in fact sustained genetic injuries, recovery on those injuries from the Army under any theory of negligence would be absolutely barred by *Feres. See Laswell v. Brown, supra,* 683 F.2d at 269.

15. A motion for reconsideration in this case has been denied by the original trial judge.

The case is currently certified for interlocutory appeal before the Third Circuit on the question of jurisdiction over the claims of Mrs. Hinkie and the Hinkie children. *Hinkie v. United States,* Civil Action No. 79–2340 (E.D.Pa. Aug. 5, 1982). A second district court decision refusing to dismiss Federal Tort claims of a genetically deficient child of a serviceman exposed to radiation is also currently before the Third Circuit on interlocutory appeal. *See Mondelli v. United States,* Civil Action No. 81–3658 (D.N.J., July 19, 1982).

16. *See* n.12.

selves by reason of a serviceman's injury, that is, derivative injuries, have been held barred by the *Feres* doctrine . . . . [citing cases]." *Id.* at 281. The court then proclaims that the *Hinkie* facts—Hinkie's wife and children had filed "independent" Federal Tort claims for injuries suffered as a result of Hinkie having been exposed to radiation during nuclear tests by the Army in 1953—"do[ ] not fall neatly into either line of cases." *Id.* Thinking it to be without firm guidance, the court undertook its own independent analysis in light of *Feres* and *Stencel* and concluded that the claims, for the reasons set forth above, were not barred.

The inherent flaw in this analysis is that the facts in *Hinkie* do not as the court suggested fall *between* the enumerated types of cases. *None* of the cases cited by the *Hinkie* court on "direct injuries" to the wives/children of servicemen involved *any* injury to the serviceman of relevance to the fact patterns in question.[17] The harm suffered by the wives/children in those cases, being truly *independent* of anything that happened to their serviceman husband/father, were not barred by *Feres*. In the second line of cases, meanwhile, *all* of the injuries to the wives/children of servicemen arose as a result of prior injuries to the servicemen themselves.[18] Because these injuries suffered by the wives/children stemmed from injuries that were incident to the military service of their respective husband/father they were all incurred derivatively from military service and were not actionable under *Feres*.

The facts in *Hinkie* clearly fall squarely under the "derivative injury" line of cases, viz., the claims of Hinkie's wife and children would not have arisen "but for" the injury to Hinkie himself. Accordingly, the *Hinkie* court erred in not following the holdings in the "derivative injury" cases. In so doing, it specifically contravened the intent of Congress, as interpreted in *Feres*, not to waive immunity in the Tort Claims Act for cases involving "injuries incident to military service."

It also appears that *Hinkie* is in conflict with its own Circuit's decision in *Jaffee v. United States*, 663 F.2d 1226 (3d Cir. 1981) (en banc). In *Jaffee*, the Third Circuit *en banc* held that constitutional causes of actions stemming from injuries incident to

**17.** *See, e.g., Costley v. United States*, 181 F.2d 723 (5th Cir. 1950) (sergeant can maintain FTCA action for injuries to wife resulting from negligence incident to delivery of child in an Army hospital; *Grigalauskas v. United States*, 103 F.Supp. 543 (D.Mass.1951), *aff'd*, 195 F.2d 494 (1st Cir. 1952) (sergeant may recover consequential damages for injuries sustained by infant daughter at Army hospital); *Fournier v. United States*, 220 F.Supp. 752 (D.Miss.1963) (serviceman and daughter recovered for wife's death caused by negligence of government employees at an officers' club); *Herring v. United States*, 98 F.Supp. 69 (D.Colo.1951) (serviceman's wife may recover for injury as a patient in Army hospital; the status of injured party is determinative); *Messer v. United States*, 95 F.Supp. 512 (D.Fla.1951) (sergeant on active duty may recover for injury to wife caused by negligence of Army hospital employees); *Wilscam v. United States*, 76 F.Supp. 581 (D.Hawaii 1948) (Naval officer recovered for death of his minor child caused by negligence of Naval medical corpsman). *Cited at* 524 F.Supp. at 280.

**18.** *See, e.g., De Font v. United States*, 453 F.2d 1239 (1st Cir.), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972) (serviceman's wife's action for mental anguish; child for loss of companionship); *Harrison v. United States*, 479 F.Supp. 529 (D.Conn.1979), *aff'd without opinion*, 622 F.2d 573 (2d Cir.), *cert. denied*, 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980) (serviceman's wife for loss of consortium); *Wisniewski v. United States*, 416 F.Supp. 599 (E.D.Wis.1976) (marital disharmony); *In re Agent Orange*, 506 F.Supp. 762 (E.D.N.Y.1980) (children of veterans claim for genetic injury caused by parents' exposure to Agent Orange). *Cited at* 524 F.Supp. at 281.

Other cases of "derivative injuries" suffered by reason of a serviceman's injury include: *Laswell v. Brown*, 683 F.2d 261 (8th Cir. 1982); *Van Sickel v. United States*, 285 F.2d 87 (9th Cir. 1960) (wife and children's action for wrongful death of serviceman caused by negligent treatment of Naval doctors); *Harten v. Coons*, 502 F.2d 1363 (10th Cir. 1974), *cert. denied*, 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975) (wife's action for costs of pregnancy and child raising for negligent vasectomy performed on husband by Army doctors); *Monaco v. United States*, 661 F.2d 129 (9th Cir. 1981) (child's action for congenital birth defects caused by serviceman father's exposure to radiation).

military service brought by, *inter alia,* a serviceman's wife, are barred by *Feres.* Having barred such claims, it seems inconceivable that the Third Circuit would hear far less compelling claims of mere negligence such as those brought by the third parties in *Hinkie.* The *Hinkie* court, therefore, should have barred the claims of both Hinkie's wife *and* children.[19]

The Federal Tort claims of the Lombard children are identical to those of the children in *Monaco* and *Agent Orange,* viz., each claim had its "genesis" in an injury to a serviceman incident to military service. As a result, those claims were properly dismissed by the District Court as being barred by *Feres.*

As for the Federal Tort claims of Ruth Lombard, the First Circuit has held that *Feres* bars claims of mental anguish suffered by family members over conditions stemming from injuries to servicemen. In *De Font v. United States,* 453 F.2d 1239 (1st Cir.), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972), the wife and children of a serviceman who died because of alleged negligent treatment by Army doctors claimed under the Tort Claims Act that they had suffered mental anguish as a result of his death. The First Circuit, in a one page opinion, held that claim properly barred by *Feres.* The court specifically addressed that part of the complaint which alleged a "claim of a separate and independent tort to the wife based on mental anguish arising from her observations of the inadequate care given her deceased husband." 453 F.2d at 1240. Noting that this independent claim ultimately traced back to the death of the serviceman/husband, the court remarked, "we are satisfied that this allegation [does] not remove the incident-to-

service limitation of *Feres.* We [are] unwilling to depart therefrom...." *Id.*

In paragraph 54 of the complaint in the case at bar, Ruth Lombard claims:

As a direct result of her husband's exposure to radioactive materials by defendants' wrongful acts and omissions as aforesaid, and the consequent adverse health and medical effects suffered by him and their children, Ruth Lombard has suffered and continues to suffer much mental anguish, emotional stress, tensions and anxieties, all to her great financial loss and detriment to her total mental and physical well-being.

(JA at 15A). In claiming to suffer "mental anguish, emotional stress, tensions and anxieties" over the condition of her husband and children, Ruth Lombard is clearly alleging a tort that, while it has some incidence of being "independent" in nature, basically it has its genesis and relies upon "injuries to servicemen where the injuries arise out of or are in the course of activity incident to [military] service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159. Her claim, being "ancillary or derivative to" an injury to a serviceman incident to military service, was properly dismissed by the District Court as being barred by *Feres.*[20] *De Font v. United States, supra; In re Agent Orange Product Liability Litigation, supra,* 506 F.Supp. at 780–81.

In sum, the District Court properly dismissed the Federal Tort claims of Ruth Lombard and the Lombard children as being barred by *Feres.*

## IV. FEDERAL TORT CLAIMS AGAINST FEDERAL OFFICIALS

■ In addition to alleging Federal Tort violations by the Government as a single

---

**19.** The dissent relies heavily on the "interstitial" analysis in *Hinkie* in contending that the claims of Ruth Lombard and the Lombard children should not be barred by *Feres.* For the reasons just discussed, this contention is faulty and without merit.

**20.** The dissent maintains that

[t]o the extent that the claims of the Lombard family members are in fact "derivative" or "ancillary," they may be viewed as inci-

dent not to Theodore Lombard's claim for in-service exposure to radiation ... but to his claim for post-discharge failure to warn. Dissent at 9 n.12. This semantic attempt at hairsplitting is to no avail. As noted *supra, all* claims for post discharge failure to warn are themselves ultimately "ancillary or derivative to" the original in-service injury sustained by Theodore Lombard. Those claims, then, are *all* properly barred by *Feres.*

unit, appellants also have alleged that eight individual federal officials have jointly and severally "fraudulently concealed information concerning the increased risk of somatic and chromosomal injury. . . ." (Complaint para. 35). This concealment, appellants argue, entitles them to damages as alleged.

The claims against the individual defendants are deficient because those defendants only came into office shortly before Lombard's complaint was filed. *See Laswell v. Brown, supra,* 683 F.2d at 268. ("The individually named defendants are . . . improperly joined because it is not claimed that they actually participated in the alleged violations.") The allegations against them in their individual capacity are accordingly vague, conclusory and impermissibly imprecise. *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977). The District Court therefore acted properly in striking the names of the eight officials in question from the complaint.

Appellant's claim against the individuals in their official capacity is likewise without merit. The Supreme Court noted in *Feres,* "[W]e know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers *or the Government he is serving.*" 340 U.S. at 141, 71 S.Ct. at 157. As officials of the federal Government, the eight named officials/defendants in this suit [21] are part of "the Government he is serving" and are thus immune from appellants' claims.

V. APPELLANTS' CONSTITUTIONAL CLAIMS

▮ In addition to their Federal Tort claims, the Lombards contend that all defendants are jointly and severally liable in their official and individual capacities for violating the First, Fifth, Ninth, and Tenth Amendments, plus 42 U.S.C. § 1985(3) and § 1986. They argue that *Feres* applies at most only to the Federal Tort claims and cannot therefore be used to bar constitutional claims as well.

This argument is without merit. "*Feres* applies to claims based upon constitutional grounds as well as to claims arising under the [Tort Claims Act]." *Laswell v. Brown, supra,* 683 F.2d at 268. *See Nagy v. United States,* 471 F.Supp. 383, 384 (D.D.C.1979). ("An action sounding in constitutional, as opposed to common law, tort is not exempt from application of the *Feres* doctrine."); *Misko v. United States, supra; Jaffee v. United States,* 468 F.Supp. 632 (D.N.J.1979). Thus, the existence of alternative remedies and the special relationship between the Government and members of the military services bars any constitutional cause of action against the United States in the case at bar. *Laswell v. Brown, supra,* 683 F.2d at 268–269. Similarly, constitutional claims against governmental officials named herein in their *official* capacity are also barred. *Jaffee v. United States,* 663 F.2d 1226, 1235–37 (3d Cir. 1981) (en banc). Constitutional claims against the named governmental officials in their *individual* capacity need not be considered insofar as those defendants were properly stricken from the complaint. *See* Part IV *supra.*

CONCLUSION

In rendering this decision, we are not without very considerable sympathy for Theodore Lombard and his family. This is particularly true for the Lombard children, for whom there is at present no viable means of redress for the injuries they may have suffered. Because we must adhere to *Feres* and other controlling decisions, however, we must find that the claims of all members of the Lombard family were properly dismissed for lack of subject matter jurisdiction. Any remedy in such cases must come from Congress in an enlargement of the jurisdiction of the courts to adjudicate such claims against the United States, or in special private bills as was formerly the case with torts now covered by the Tort Claims Act, *supra.* The dismissal of the complaint is therefore affirmed.

*Judgment accordingly.*

GINSBURG, Circuit Judge, concurring in part and dissenting in part:

My dissent is directed to the court's expansive interpretation of the doctrine of

---

**21.** *See* note 1 *supra.*

*Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed.2d 152 (1950), to preclude the assertion of claims under the Federal Tort Claims Act (FTCA) by Theodore and Ruth Lombard and the Lombard children. I agree that sovereign immunity shields the United States and its agencies from the Lombards' constitutional tort claims, and that no member of the Lombard family has stated a tenable claim, directly under the Constitution, against federal officials appointed long after Theodore Lombard's exposure to radioactive materials, his discharge from military service, and the birth of his children.[1]

In my view, the *Feres* doctrine does not blanket the FTCA claims stated by Theodore Lombard, his wife and children. I therefore believe the district court erred in dismissing those claims at the threshold for lack of subject matter jurisdiction on the basis of *Feres.* I express no opinion on other impediments to the maintenance or proof of the Lombards' suit, nor do I intimate any views on the ultimate merit of their claims.

## I. THE FTCA CLAIMS

Construed most favorably to the Lombards, their FTCA claims are as follows. Theodore Lombard regularly handled substantial quantities of radioactive materials during his two-year Army service at the Los Alamos National Laboratory in connection with the Manhattan Project. The government deliberately exposed him to these dangerous materials but failed to provide him with any form of physical protection and did not effectively monitor his exposure to radiation. Further, the United States negligently failed to warn him at any time of the health hazards associated with radiation exposure.[2] Theodore Lombard incurred permanent damage to his germ plasm as a direct result of his exposure to radiation at Los Alamos. Not knowing this fact, he fathered four children, all of whom suffer moderate to severe congenital defects as a direct consequence of his chromosomal injuries.[3]

Theodore Lombard does not press recovery for his in-service radiation exposure. He maintains, however, that the government's failure to warn him of radiation-related health risks deprived him of notice that would have alerted him to seek timely medical treatment and genetic counseling. Such treatment and counseling, he appears to assert, would have enabled him to plan and pursue his life ever mindful of the risks to which he had been exposed; properly warned, he would have been vigilant with respect to his own health, and would have exercised care to avoid fathering children who might be born with congenital defects. This failure to warn, Lombard argues, constitutes a distinct tort that occurred after he left the armed forces.

Ruth Lombard asserts that she has experienced serious mental and emotional distress because of the medical problems of her offspring. The children demand compensation for their own injuries, presumably measured by the difference in value between the lives they have and the better lives they assert they would have had absent the government's wrongful acts and omissions. It bears emphasis that these claims do not encompass any alleged loss of

1. In contrast, the veteran and his wife who sought recovery directly under the Constitution for the veteran's in-service exposure to radiation in *Jaffee v. United States,* 663 F.2d 1226 (3d Cir. 1981) (en banc), *cert. denied,* —— U.S. ——, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982), sued civilian and military officials alleged to be "responsible for ordering the attendance of the soldiers at the [nuclear testing] site." 663 F.2d at 1248 (Gibbons, J., dissenting).

2. The complaint alternatively alleges that the government's failure to warn was intentional. The only intentional torts for which the FTCA permits recovery are enumerated types of misconduct by federal investigative or law enforcement officers. *See* 28 U.S.C. § 2680(h). Since the complaint does not assert the commission of any of the enumerated intentional torts or claim that intentional acts or omissions were committed by federal investigative or law enforcement officers, the alternative allegations cannot constitute a predicate for FTCA liability.

3. For example, one of the Lombard children is a paraplegic and another is severely retarded.

the services or companionship of Theodore Lombard.[4]

## II. The *Feres* Doctrine

The FTCA effected a limited waiver of the government's traditional immunity from suit by authorizing federal district courts to exercise exclusive original jurisdiction over certain tort actions against the United States. The law of the place where the alleged act or omission occurred provides the rule of decision in such controversies. *See* 28 U.S.C. § 1346(b).[5] The Supreme Court in *Feres* held that the FTCA does not render the government liable to members of the armed forces for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159.[6] Reaffirming this holding in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977),[7] the Court restated three considerations upon which the *Feres* doctrine rests: (1) the "distinctively federal" character of the relationship between military personnel and the national government; (2) the availability of a generous alternative compensation scheme under the Veterans' Benefits Act; and (3) the need to maintain military discipline and the command structure of the armed forces.

### A. *Feres* in relation to Theodore Lombard's FTCA claims

The *Feres* doctrine does not inexorably bar a veteran's FTCA claim merely because the claim is linked with an in-service injury. Thus in *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Supreme Court held that a veteran could maintain an action for negligent post-discharge treatment of an injury incurred in service seven years earlier. The Court recognized that the veteran's claim stemmed

---

4. In contrast, loss of the services and companionship of a husband and father, first through his disability, then by his death, was the central focus of the complaint in *Laswell v. Brown,* 683 F.2d 261 (8th Cir. 1982), cited repeatedly in the court's opinion. In *Laswell,* the widow and children of a veteran alleged that his in-service exposure to atmospheric nuclear tests caused his illness (Hodgkin's Disease) and eventual death. In addition to their prayer for damages for the loss of their father, the Laswell children sought damages for the increased risk that they or their offspring would suffer from radiation-related genetic defects. The Laswell children did not assert that they had incurred such genetic injuries, only that they and their offspring faced a higher than normal risk of harm. The Eighth Circuit agreed with the district court "that a lawsuit for personal injuries cannot be based only upon the mere possibility of some future harm." *Id.* at 264, 269. The Eighth Circuit did refer, in addition, to the *Feres* doctrine in relation to the children's claims, suggesting that *Feres* would bar the children's claims, just as, in that court's view, *Feres* would bar a claim by their father. However, in the context of the children's claims, the Eighth Circuit's *Feres* reference was swift and conclusory.

5. Section 1346(b) provides, in relevant part, that

> the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or

> wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

6. No explicit provision in the Act required the *Feres* holding. The FTCA contains several specific exceptions, including one for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). The incidents at issue in *Feres* occurred in peacetime and did not involve "combatant activities." *See* 340 U.S. at 136–37, 71 S.Ct. at 154–55.

7. Between 1950, when *Feres* was decided, and 1977, when it was reaffirmed in *Stencel,* the Court occasionally seemed to retreat from certain aspects of the reasoning underlying the doctrine. *See generally Hunt v. United States,* 636 F.2d 580, 585–89 (D.C.Cir.1980) (collecting cases). While *Stencel* makes clear that *Feres* has not lost vitality, *id.,* the soundness of the *Feres* Court's interpretation of the FTCA continues to be questioned. *See, e.g., Monaco v. United States,* 661 F.2d 129, 131–32, 134 & n.3 (9th Cir. 1981) (applying *Feres* to bar a claim resembling those of the Lombard children but characterizing the doctrine as "on shaky ground" and its rationale as "not fully convincing"), *cert. denied,* —— U.S. ——, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

from his service in the armed forces but observed that he was suing only for post-service malpractice. The alleged wrongful conduct occurred while he was a civilian, not while he was on active duty or subject to military discipline. Therefore *Feres* did not apply and the veteran was entitled to proceed with his case. *Id.* at 112–13, 75 S.Ct. at 143–44.

Building upon the reasoning of *Brown,* three federal courts have recognized a claim for negligent post-discharge failure to warn a veteran of the consequences of an intentional in-service act. The first of these decisions was *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979), a suit by a veteran who was administered LSD without his knowledge or consent while in custody during his military service. The court held that although *Feres* barred recovery for the improper in-service administration of LSD, the doctrine did not reach the "separate wrong" alleged—the post-discharge failure to warn. *Id.* at 352.[8] Subsequently, two other courts reached similar conclusions in suits brought by survivors of veterans who died from radiation-related cancer allegedly caused by the veterans' exposure to atmospheric nuclear tests while on active military duty. *See Broudy v. United States,* 661 F.2d 125 (9th Cir. 1981); *Everett v. United States,* 492 F.Supp. 318 (S.D.Ohio 1980).

The government types Theodore Lombard's claim as one involving a "continuing tort" that began with his in-service expo-sure to radiation. The failure to warn theory will not do to displace *Feres,* the government argues, because any alleged obligation to give notice is inseparable from the source of that obligation—the in-service exposure. The district court in this case, citing other decisions, viewed the matter that way. *See* 530 F.Supp. 918, 921 (D.D.C.1981); *accord, Laswell v. Brown, supra* note 4. However, the court in *Broudy* suggested that the failure to warn a veteran of radiation's potential effects might constitute an independent, post-service negligent act if the government learned of the danger after the veteran left the armed forces. 661 F.2d at 128–29.[9]

As in *Broudy,* the allegations in this case concerning the government's knowledge of radiation-related health hazards are "somewhat confused" and temporally imprecise.[10] *See* 661 F.2d at 129 & n.7. The Lombards apparently concede the government's awareness of serious radiation-related hazards while Theodore Lombard served in the Army. However, they are not now sufficiently informed to state with any degree of precision whether, or the extent to which, the government's knowledge of such risks increased following Theodore Lombard's discharge from service. (While the government characterizes the alleged tortious conduct as "continuing," it has not asserted cognizance of all significant risks prior to Theodore Lombard's discharge.) I would therefore follow a course close to the one

---

**8.** Thornwell ultimately obtained an award of $625,000 from Congress in full satisfaction of his claims. Act for the Relief of James R. Thornwell, Priv.L.No.96–77, 94 Stat. 3618 (1980) (sum awarded to a trustee to act on Thornwell's behalf).

**9.** *Broudy* was decided the same day as *Monaco v. United States,* 661 F.2d 129 (9th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982), which held that *Feres* barred claims of a veteran and his child for radiation-related injuries. The decisions in both *Broudy* and *Monaco* were written by the same judge; the opinions appear in tandem in the *Federal Reporter.* No post-service duty to warn figured in *Monaco. Broudy* was different, the court indicated, because of the apparent allegation of a duty to warn based on knowledge the government acquired after the

soldier returned to civilian life. *See* 661 F.2d at 128.

**10.** *Compare* Complaint ¶ 35 (government fraudulently concealed information concerning radiation-related health hazards "[a]t all relevant times from [the beginning of Theodore Lombard's service at Los Alamos] to the present") *with id.* ¶ 34(i) (defendants, continually since Theodore Lombard's discharge from military service, have "fail[ed] to warn [him] of the ongoing nature of [radiation-related health risks] so that whatever mitigating steps might be taken and whatever diagnostic and therapeutic courses can be followed are made objects of consideration and explored in their multiplicity and chosen or not chosen as the case may be").

marked in *Broudy* and accord Theodore Lombard an opportunity, with the aid of discovery, to further develop and restate his claim. Accordingly, I dissent from the majority's holding that *Feres* mandates instant dismissal of Theodore Lombard's FTCA complaint.

B. *Feres* in relation to the family members' FTCA claims

Since *Feres,* two lines of authority have evolved with regard to FTCA recovery by military family members. *See Hinkie v. United States,* 524 F.Supp. 277, 280–81 (E.D.Pa.1981) (collecting cases), *reconsideration denied and certified for interlocutory appeal,* Civil Action No. 79–2340 (E.D.Pa. Aug. 5, 1982). Members of a soldier's family have recovered under the FTCA for personal injuries they have sustained directly, independent of any harm to the soldier, where the injuries arose from non-combatant activities. At the same time, recovery by family members has been disallowed on the basis of *Feres* where the soldier sustains a service-connected injury and the family member experiences a derivative loss solely by reason of the soldier's disability or death.

The government rests its argument for application of *Feres* to the FTCA claims of Lombard family members on two propositions. First, it types the claims of Ruth Lombard and the Lombard children as derivative of, or ancillary to, those of Theodore Lombard; like wrongful death or loss of consortium claims, the government contends, the family members' claims in this case should be excluded from FTCA coverage by *Feres* to the same extent that the veteran's claim is barred by that doctrine. Second, the government urges that *Feres* bars the family claims, without specific consideration of the factors detailed in *Stencel,* because the injuries to the family members had their genesis in Theodore Lombard's in-service exposure to radiation. The first leg of the government's argument inaccurately classifies the family claims; the second truncates, without warrant, the appropriate legal inquiry.

As the *Hinkie* court noted in a similar context,[11] this controversy does not fall neatly into either line of post-*Feres* decisions relating to FTCA claims by military family members. It resembles the cases which have permitted recovery for direct injuries to family members in that the Lombards assert no claim for lost services or companionship of Theodore Lombard. On the other hand, it also resembles the cases which have rejected recovery by family members for derivative harms in that the Lombards' injuries would not have occurred "but for" the injury to Theodore Lombard. *See* 524 F.Supp. at 281. Since this situation does not fit precisely within either category, I would not bar the claims of Lombard family members automatically, simply by labeling them "derivative" or "ancillary."[12]

11. *Hinkie* involved claims against the United States by the family of a veteran who allegedly had been deliberately exposed to radiation in approximately 18 atmospheric nuclear tests. This exposure, the complaint stated, caused chromosomal damage to the veteran which in turn caused his wife to miscarry, and occasioned serious birth defects in his children and the death of one of them. The *Hinkie* court stressed that the case involved only the injuries suffered by the veteran's wife and children, and not any deleterious effects of the exposure upon the quality of the veteran's relationship with his family. The veteran himself asserted no claim of any kind against the United States for his own physical injuries.

In contrast, the *Jaffee* case, *supra* note 1, featured the veteran's personal injury claims and presented no claim relating to children born with birth defects. The plaintiff-veteran in *Jaffee* sought damages for injuries to himself and related medical expenses; his wife asserted wholly derivative claims for deprivation of his services, society, consortium, and companionship, and her liability for his medical expenses. *See* 663 F.2d at 1248 (Gibbons, J., dissenting).

12. To the extent that the claims of the Lombard family members are in fact "derivative" or "ancillary," they may be viewed as incident not to any claim by Theodore Lombard for in-service exposure to radiation (which all agree *Feres* bars) but to his claim for post-discharge failure to warn. If, as I believe, the *Feres* doctrine does not automatically preclude Theodore Lombard's assertion of this latter claim, it necessarily cannot bar at the threshold the family's FTCA claims.

Reflexive application of the "genesis incident to service" test advocated by the government would stray from the Supreme Court's instructions in *Stencel. See* Note, *The Effect of the* Feres *Doctrine on Tort Actions Against the United States by Family Members of Servicemen,* 50 Fordham L.Rev. 1241, 1250–53 (1982). After describing the considerations underlying the *Feres* doctrine, the Court in *Stencel* appraised the force of each factor in context before concluding that *Feres* barred the claim at issue. *See* 431 U.S. at 672–73, 97 S.Ct. at 2058–59. Thereafter, most lower courts considering the applicability of *Feres* to novel claims brought by persons other than service members have undertaken a similar analysis. *See Hinkie,* 524 F.Supp. at 282 (collecting cases). Indeed, the principal decision which the government invokes on this issue looked to the factors detailed in *Stencel, see Monaco v. United States, supra* note 9, 661 F.2d at 133–34, and the district court focused on the *Stencel* factors in this very case. *See* 530 F.Supp. at 921–22.

It follows, therefore, even if one accepts the government's position concerning the "continuing" nature of the alleged wrong to Theodore Lombard, that the family members' claims require a more searching analysis than the government proposed in order to determine whether, or how deeply, those claims implicate the concerns that gave rise to the *Feres* doctrine. A cogent discussion of these issues appears in *Hinkie,* 524 F.Supp. at 282–84. I believe that the *Hinkie* court analyzed the situation properly, although its appraisal differs from that of several other courts, including the district court in this case. I would adopt the *Hinkie* decision's reasoning and apply it to this similar case.[13]

*Hinkie* assigns scant weight, in resolving the question here at issue, to the first two *Feres* underpinnings, the "distinctively federal" relationship of soldier to government, and the compensation afforded under the Veterans' Benefits Act. A civilian whose spouse or parent is a veteran hardly bears the relationship to government that a soldier on active duty does.[14] The Veterans' Benefits Act provides compensation to "any veteran" injured in the line of duty, 38 U.S.C. § 331, but it does not compensate a veteran's spouse or child for his or her own injuries.[15]

The third *Feres* underpinning identified in *Stencel* is the potentially deleterious effect upon military discipline of judicial scrutiny of the operations of the armed services. This consideration, the *Hinkie* court ac-

---

**13.** The court characterizes *Hinkie*'s reasoning as "fatally flawed," and its result as inconsistent with the Third Circuit's decision in *Jaffee, supra* note 1. Op. at 19–20, 22. The government, however, did not advance any *Jaffee*-based argument in its motion for reconsideration or in its six-page supporting memorandum in *Hinkie.* It seems unlikely that this omission was pure oversight, since *Jaffee* was decided on November 2, 1981, and the motion for reconsideration in *Hinkie* was filed on February 22, 1982. We need not speculate over the matter, however, because the district judge in *Hinkie* has certified the following question for interlocutory appeal to the Third Circuit:

> Does the *Feres* doctrine bar suit against the United States for a mother's miscarriages and birth defects and death of children if the injuries were caused by the Army's negligent exposure of their husband and father to harmful levels of radiation in the course of his former military service?

*Hinkie v. United States,* Civil Action No. 79–2340 (E.D.Pa. Aug. 5, 1982). In addition, the district judge who heard the *Jaffee* case has recently certified for interlocutory appeal to the Third Circuit the question whether *Feres* bars a suit on behalf of a congenitally injured child of a veteran who had been exposed to radiation while in service. *Mondelli v. United States,* Civil Action No. 81–3658 (D.N.J. July 19, 1982). These certifications strongly suggest that the issue presented in *Hinkie* and *Mondelli* remains one "as to which there is substantial ground for difference of opinion." *See* 28 U.S.C. § 1292(b).

**14.** The Lombard children were not conceived until after Theodore Lombard left Los Alamos. The record does not indicate whether he had married, or even met, Ruth Lombard at the time of his military service.

**15.** The Act does provide that veterans with disabilities rated at 50% or greater may recover additional compensation for dependents. *See* 38 U.S.C. § 335. Such additional benefits relate to the family responsibilities of disabled veterans; they are not furnished by reason of disabilities the dependents themselves may suffer.

knowledged, presents a hard issue. A trial in that case, or in this one, might "involve testimony of Armed Services members regarding each other's decisions and, perhaps, the 'second-guessing' of military orders." 524 F.Supp. at 284. But the orders involved in this case were given more than thirty-five years ago, and the injuries to the Lombard children did not become manifest until several years after Theodore Lombard's discharge from service. The extended interval between the issuance of the orders and the appearance of the injuries dilutes the argument that an airing in court of the Lombard family members' claims would occasion genuine harm to the command structure of the armed forces. Further, the argument that judicial scrutiny of military orders would adversely affect discipline proves too much, for it would preclude any civilian FTCA claim for damages resulting from military exercises. Yet it is plain that the Act does not generically bar such claims unless they arise "during time of war." 28 U.S.C. § 2680(j).

While the question is not free from doubt, I do not believe the risk to military discipline posed by the FTCA claims of Ruth Lombard and the Lombard children is sufficiently grave to bring those claims within the reach of a reasonably delineated *Feres* doctrine. Accordingly, I dissent from the majority's holding, which follows no legislative direction but instead enlarges a problematic court precedent. *See supra* notes 6 and 7. While lower courts are bound by the Supreme Court's decision in *Feres*, they are hardly obliged to extend the limitation *Feres* placed upon remedial legislation ordered by Congress.

### III. Other Obstacles to Recovery

It does not follow that a finding of subject matter jurisdiction will lead to a recovery, or even to a trial, for Theodore Lombard or his family. I note in this regard that Ruth Lombard's claim rests upon a theory akin to "wrongful birth," while the children's claims, based upon conduct that occurred before their conception, present a variant of "wrongful life."[16] State law provides the rule of decision for FTCA claims.[17] While state forums recently have accorded varying degrees of receptivity to "wrongful birth" claims, few decisions to date sanction claims on behalf of children for preconception torts.[18] *See generally* Rogers, *Wrongful Life and Wrongful Birth: Medical Malpractice in Genetic Counseling and Prenatal Testing*, 33 S.C.L.Rev. 713 (1982).

Even if Theodore Lombard can develop and shape his claim so as to avoid pretrial dismissal, and if the applicable state law recognizes claims of the kind asserted by Ruth Lombard and the Lombard children, it is far from clear that the Lombards could prove all of the elements of the claims they have attempted to assert. Proving causation, in particular, would pose formidable difficulties. In addition, there may be other exceptions to the FTCA that would bar

**16.** Under a "wrongful birth" theory, a parent seeks damages from a party who negligently fàiled to inform her of the increased risk of bearing a child suffering from birth defects. Under a "wrongful life" theory, a deformed child seeks compensation from a party whose negligence caused his birth with the result that the child experiences a life afflicted with the deformity. In both cases, the defendant typically is a physician. *See generally* Rogers, *Wrongful Life and Wrongful Birth: Medical Malpractice in Genetic Counseling and Prenatal Testing*, 33 S.C.L.Rev. 713 (1982).

**17.** The complaint alleges violations of the laws of Maine, Massachusetts, and New Mexico. The record at this stage of the proceedings does not permit an informed choice of law decision.

**18.** "Wrongful life" claims have stimulated considerable debate in commentary. *See, e.g.*, Capron, *Informed Decisionmaking in Genetic Counseling: A Dissent to the "Wrongful Life" Debate*, 48 Ind.L.J. 581, 594–604 (1973) (advocating recognition of "wrongful life" theory); Kelley, *Wrongful Life, Wrongful Birth, and Justice in Tort Law*, 1979 Wash.U.L.Q. 919, 934–42 (opposing recognition of claim for "wrongful life"); Waltz & Thigpen, *Genetic Screening and Counseling: The Legal and Ethical Issues*, 68 Nw.U.L.Rev. 696, 759–67 (1973) (criticizing the reasoning of judicial decisions that rejected "wrongful life" claims but urging legislative resolution of underlying policy issues).

There are no reported decisions on either theory in any of the states whose law arguably governs in this case. *See supra* note 17.

the Lombards' claims.  *See Hinkie,* 524 F.Supp. at 284–85 & n.6.  But the question at this juncture is not whether there is any substantial likelihood that the Lombards will prevail on their FTCA claims.  The only issue before the panel is whether the district court has subject matter jurisdiction over those claims.[19]  I would hold that it does.

---

**19.**  Neither a determination that the law of the state which provides the rule of decision does not recognize any right to recover for the injuries the Lombards allege, nor a determination that the claimants failed to assert or prove all the elements of a recognized cause of action, would justify dismissal for want of subject matter jurisdiction.  Rather, both would call for disposition of the claims on the merits.  *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Harper v. McDonald,* 679 F.2d 955, 960 (D.C.Cir.1982).